1  Matthew Strugar (SBN 232951)
   Law Office of Matthew Strugar
2  3435 Wilshire Blvd., Suite 2910
   Los Angeles, CA 90010
3  (323) 696-2299
   matthew@matthewstrugar.com
4
   Jay R. Shooster (*pro hac vice* forthcoming)
5  jshooster@richmanlawpolicy.com
   535 Mission Street
6  San Francisco, CA 94105
   Telephone: (718) 705-4579
7  Facsimile: (718) 228-8522

8  *Attorneys for Plaintiff Marshall*
   *and Proposed Class*

9

10              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  DEZZI RAE MARSHALL, on behalf of herself and all others similarly situated, | Case No. _____ |
| 13 | |
| 14                 Plaintiff, | **CLASS ACTION COMPLAINT** |
| 15                 v. | <u>DEMAND FOR JURY TRIAL</u> |
| 16  RED LOBSTER MANAGEMENT LLC; RED LOBSTER SEAFOOD CO., LLC; RED LOBSTER RESTAURANTS LLC; and RED LOBSTER HOSPITALITY LLC, | |
| 17 | |
| 18 | |
| 19                 Defendants. | |

20

                        1        CLASS ACTION COMPLAINT

1    Plaintiff Dezzi Rae Marshall, a resident of Los Angeles County, California,

2    individually and on behalf of other similarly situated individuals, by and through

3    her counsel, hereby brings this action against Defendants Red Lobster Management

4    LLC, Red Lobster Seafood Co., LLC, Red Lobster Restaurants LLC, and Red

5    Lobster Hospitality LLC (collectively, "Red Lobster" or "Defendants") regarding

6    the deceptive marketing and sale of Red Lobster's Maine lobster and shrimp

7    products (the "Products") as "sustainable" when they may be sourced from

8    suppliers that use environmentally harmful and inhumane practices, and alleges the

9    following based upon information, belief, and the investigation of her counsel:

## JURISDICTION AND VENUE

10

11    1.    This Court has original subject-matter jurisdiction over this proposed

12    class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act

13    ("CAFA"). There are at least 100 members in the proposed class. Plaintiff Marshall

14    is a citizen of California. On information and belief, Defendant Red Lobster

15    Management LLC is a citizen of the State of Florida; Defendant Red Lobster

16    Seafood Co., LLC is a citizen of the State of Delaware; Defendant Red Lobster

17    Restaurants LLC is a citizen of the State of Florida; and Defendant Red Lobster

18    Hospitality LLC is a citizen of the State of Florida. The amount in controversy

19    exceeds the sum of $5,000,000, exclusive of interest and costs.

20    2.    This Court has personal jurisdiction over Defendants in that they

2    CLASS ACTION COMPLAINT

regularly conduct and transact business in California, purposefully avail themselves of the laws of California, market their Products with the Sustainability Representations to consumers in California, and sell their Products in numerous restaurants in California.

3.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading marketing and advertising regarding the nature and sourcing of the Products and sales of the Products at issue, occurred within this District.

## INTRODUCTION

4.     Due to concerns about sustainability, consumers are increasingly concerned with how their food is produced.

5.     In particular, consumers have grown concerned about the environmental, animal welfare, and public health impacts of seafood production, and they consciously seek out seafood products that are sourced sustainably in accordance with high environmental and animal welfare standards.

6.     Red Lobster knows that consumers seek out and wish to buy seafood products that are sourced sustainably in accordance with high environmental and animal welfare standards. Red Lobster also knows that consumers will pay more for such products than they will for products sourced from suppliers that use unsustainable, environmentally harmful, and/or inhumane practices, or will

CLASS ACTION COMPLAINT

purchase more of the products they believe to be sustainably sourced.

7.     To capture this growing market of consumers, Red Lobster makes prominent marketing claims on its restaurant menu that the Products are sustainable ("Sustainability Representations"). For example, the cover of Red Lobster's menu includes the representations "SEAFOOD WITH STANDARDS" and "Traceable. Sustainable. Responsible." An example is show below, with the relevant claims in the bottom right corner:



8.     On the inside of Red Lobster's restaurant menu, the company repeats these Sustainability Representations, emphasizing, "These are more than just words on our menu—it's our promise that all of the seafood we serve is sourced to the highest standards." An example is below:

4          CLASS ACTION COMPLAINT

Seafood With Standards
TRACEABLE. SUSTAINABLE. RESPONSIBLE.

These are more than just words on our menu—it's our promise that all of the seafood
we serve is sourced to the highest standards. Because, as one of the world's largest
seafood purchasers, we believe it's our responsibility to protect and preserve our oceans
and marine life for generations to come. Learn more about our commitments at
**www.redlobster.com/SeafoodWithStandards**

*CONTAINS (OR MAY CONTAIN) RAW OR UNDERCOOKED INGREDIENTS. CONSUMING RAW OR UNDERCOOKED MEATS, POULTRY, SEAFOOD,
SHELLFISH OR EGGS MAY INCREASE YOUR RISK OF FOODBORNE ILLNESS, ESPECIALLY IF YOU HAVE CERTAIN MEDICAL CONDITIONS.

We offer several menu items that are made without gluten-containing ingredients. Please reference your tabletop menu
for information on gluten and our menu items, or visit us online at www.redlobster.com/allergy-nutrition.

A 2,000 calorie-per-day diet is used for general nutritional advice, but calorie needs vary.

14                                                                 G-200-R_0120

9.      Reasonable consumers who see Red Lobster's Sustainability Representations—*i.e.*, Red Lobster's "promise" to provide "sustainable" seafood "sourced to the highest standards"—would expect that the Products are sourced sustainably in accordance with the highest environmental and animal welfare standards.

10.     Contrary to Red Lobster's claims, its Maine lobster menu items ("the

5       CLASS ACTION COMPLAINT

Maine Lobster Products"[1]) are sourced from suppliers that use environmentally destructive practices that threaten endangered populations of North American right whales.

11.    Furthermore, Red Lobster's shrimp menu items ("the Shrimp Products"[2]) are sourced from industrial shrimp farms that do not employ the highest environmental or animal welfare standards. Monterey Bay Aquarium Seafood Watch ("Seafood Watch") recommends that consumers seeking sustainable seafood should not choose shrimp from the regions that Red Lobster sources from, because of environmentally destructive practices, poor reporting of environmental data and standards, and overuse of antibiotics.

12.    Moreover, Red Lobster shrimp suppliers use inhumane practices

---

[1] The "Maine Lobster Products" include all Red Lobster menu items that contain Maine Lobster. The Maine Lobster Products include, but are not limited to, the following: Live Maine Lobster; Maine Lobster Tail; Steak-And-Lobster; Ultimate Surf & Turf; Lobster Lover's Dream; Ultimate Feast; Lobster, Shrimp And Salmon; Bar Harbor Lobster Bake; Lobster Linguini; Lobster Bisque; Petite Maine Lobster Tail; and Lobster And Langostino Pizza.

[2] The "Shrimp Products" include all Red Lobster menu items that contain farmed shrimp. The Shrimp Products include, but are not limited to, the following: Seaside Shrimp Trio; Admiral's Feast; Ultimate Feast; Lobster, Shrimp And Salmon; Bar Harbor Lobster Bake; Lobster Lover's Dream; Baja Shrimp Bowl; Classic Caesar Salad With Seasoned Shrimp; Parrot Isle Jumbo Coconut Shrimp; Crispy Shrimp; Today's Catch; Walt's Favorite Shrimp; Garlic Shrimp Skewers; Shrimp Linguini Alfredo; Garlic-Grilled Shrimp; Popcorn Shrimp; Garlic Shrimp Scampi; and Signature Jumbo Shrimp Cocktail.

6        CLASS ACTION COMPLAINT

including routine eyestalk ablation, a practice in which the eyestalk gland of female shrimps is crushed, burned, or cut off—without painkillers—in order to increase reproduction.

13. Consumers who dine at Red Lobster or otherwise purchase menu items lack the information necessary to discover whether the Products are in fact "sustainable," or to know or ascertain the true nature and sourcing of the Products. Reasonable consumers must therefore rely on Red Lobster's representations.

14. Red Lobster intends for consumers to rely on its Sustainability Representations, calling them "a promise" and "more than words," and reasonable consumers did and do, in fact, rely on these representations.

15. By deceiving consumers about the nature and sourcing of the Products, Red Lobster has sold a greater volume of the Products, been able to charge higher prices for the Products than otherwise, and has taken away market share from competing products, thereby increasing its own sales and profits.

16. During any applicable statute of limitations period, Plaintiff Marshall and Class members (described below) saw Red Lobster's Sustainability Representations when purchasing the Products in California. Based upon these misrepresentations, Plaintiff Marshall and Class members paid more for the Products than they otherwise would have paid, purchased the Products when they otherwise would not have, or purchased more of the Products than they otherwise

CLASS ACTION COMPLAINT

would have, had they known the truth about Red Lobster's production and sourcing practices. As a result, Plaintiff Marshall and Class members suffered injury.

17. Red Lobster's false and deceptive representations violate the consumer-protection statutes of California.

18. Because Red Lobster's Sustainability Representations are false, deceptive, and misleading, Plaintiff Marshall brings this case on behalf of a class of California consumers who purchased the Products within the statute of limitation period. Plaintiff Marshall seeks relief including actual damages, interest, costs, reasonable attorneys' fees, and an order enjoining Red Lobster's unlawful and deceptive acts. Even today, proposed Class members in California are purchasing the misrepresented Products, and they will continue to do so in the future unless Red Lobster's deceptive marketing is stopped.

## **PARTIES**

19. Defendant Red Lobster Management LLC is a Florida limited-liability company with a principal place of business in Florida.

20. Red Lobster Seafood Co., LLC is a Delaware limited-liability company with a principal place of business in Delaware.

21. Red Lobster Restaurants LLC is a Florida limited-liability company with a principal place of business in Florida.

22. Red Lobster Hospitality LLC is a Florida limited-liability company

8     CLASS ACTION COMPLAINT

with a principal place of business in Florida.

23.    Collectively, Red Lobster produces, advertises, markets, and distributes the Products throughout the United States. Red Lobster created and/or authorized the false and deceptive marketing of the Products.

24.    Plaintiff Marshall is a citizen of the State of California, and a resident of Los Angeles County. At all times mentioned herein, Plaintiff Marshall was and is an individual consumer over the age of 18.

25.    Within the Class Period (as defined below), Plaintiff Marshall purchased Red Lobster's "Family Feast," which is a Maine Lobster Product and a Shrimp Product; "Lobster Lover's Dream," which is a Maine Lobster Product; and "Ultimate Feast," which is a Maine Lobster Product and a Shrimp Product. Plaintiff Marshall purchased the Products at the Red Lobster located in Santa Clarita, California at 27524 The Old Road.

26.    In deciding to make her purchases, Plaintiff Marshall saw, relied upon, and reasonably believed Red Lobster's Sustainability Representations.

27.    Plaintiff Marshall was willing to purchase and to pay the requested prices for Red Lobster's Products because of the expectation that the Products were, in fact, sustainable and sourced in accordance with the highest environmental and animal welfare standards, and thus, were not sourced from suppliers that use environmentally harmful and inhumane practices.

9        CLASS ACTION COMPLAINT

28.     Had Plaintiff Marshall known at the time that Red Lobster's Products were not sustainable but sourced from suppliers that use environmentally harmful and inhumane practices, she would not have purchased or continued to purchase the Products at the requested prices.

29.     Plaintiff Marshall wishes to be able to continue purchasing the Products and, therefore, wishes to see them truthfully and sustainably sourced in accordance with the highest environmental and animal welfare standards. Moreover, Plaintiff Marshall believes that members of her proposed class are currently purchasing, and will continue to purchase, the Products at the requested prices, unaware that the Sustainability Representations are misleading, unless Red Lobster's conduct is enjoined.

## FACT ALLEGATIONS

**A.     Red Lobster Falsely and Deceptively Markets the Products with Sustainability Representations.**

30.     Red Lobster markets and sells the Products throughout the United States, including in California.

31.     Red Lobster's restaurant menu markets the Products with Sustainability Representations, including "Seafood With Standards," "Traceable. *Sustainable.* Responsible.," and "These are more than just words on our menu— it's our *promise* that all of the seafood we serve is *sourced to the highest*

10        CLASS ACTION COMPLAINT

***standards***" (emphases added). Examples of these marketing claims are provided *supra* at paragraphs 4-5.

32.     Red Lobster's Sustainability Representations convey to a reasonable consumer that the Products are made from lobster and shrimp sourced in accordance with the highest environmental and animal welfare standards.

33.     The Federal Trade Commission ("FTC") has determined that unqualified general environmental benefit claims such as "sustainable"[3] "likely convey that the product . . . has specific and far-reaching environmental benefits and may convey that the item . . . has no negative environmental impact."[4] For that reason, the FTC has admonished companies not to use unqualified claims such as "sustainable" due to its determination that "it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims."[5]

34.     Research demonstrates that claims such as "sustainably produced" are perceived by many consumers to mean "produced according to higher animal

---

[3] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad.

[4] FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).

[5] *Id.; FTC Sends Warning Letters*, *supra* note 3.

11        CLASS ACTION COMPLAINT

welfare standards."[6]

35.    Consumers have ranked the minimal use of hormones and drugs, no pollution of the environment, and animal welfare as three of the four most important elements of sustainable aquaculture.[7]

36.    A study on consumer perception of the phrase "ecologically sustainable" found that a majority of consumers "expect eco-labeled seafood to be harvested in a way that reduced impact on the fish population or the marine environment."[8] And, out of 235 responses, only 4% "expressed skepticism about the term ['ecologically sustainable']" and felt that "it was primarily a marketing term without real meaning."[9]

**B.    Contrary to Red Lobster's Sustainability Representations, Its Maine Lobster Products Are Sourced from Suppliers That Use Environmentally Destructive and Inhumane Practices.**

37.    Red Lobster sources Maine lobster for its Maine Lobster Products from the Gulf of Maine lobster fishery.

---

[6] Katrin Zander et al., *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Mktg. 251 (Dec. 22, 2017), https://www.tandfonline.com/doi/full/ 10.1080/08974438.2017.1413611.

[7] *See id.*

[8] Loren McClenachan et al., *Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*, 17 Fish & Fisheries 825 (Sept. 2016), https://onlinelibrary.wiley.com/doi/abs/10.1111/faf.12148.

[9] *Id.*

38.     In April 2020, the U.S. District Court for the District of Columbia held that inadequate regulation of the Gulf of Maine lobster fishery violated the Endangered Species Act and found that the fishery "had the potential to harm the North Atlantic right whale at more than three times the sustainable rate."[10]

39.     In August 2020, in the wake of that decision, and having found that the fishing gear used in the Gulf of Maine lobster fishery posed legitimate risk to right whales, the Marine Stewardship Council suspended its sustainability certification of the Gulf of Maine lobster fishery.[11]

40.     The Gulf of Maine lobster fishery is considered a Category I fishery by the National Marine Fisheries Service ("NMFS") due to the frequency of serious injuries to marine mammals caused by entanglement in lobster gear.[12]

41.     A "Category I fishery" means "a commercial fishery determined by the Assistant Administrator to have frequent incidental mortality and serious injury of marine mammals. A commercial fishery that frequently causes mortality or

_____

[10] *Ctr. for Biological Diversity v. Ross*, No. CV 18-112 (JEB), 2020 U.S. Dist. LEXIS 62550, 2020 WL 1809465, at *9 (D.D.C. Apr. 9, 2020).

[11] Chris Chase, *MSC suspends Maine lobster fishery certification,* SeafoodSource (Aug. 4, 2020), https://www.seafoodsource.com/news/environment-sustainability/msc-suspends-us-lobster-fishery-certification.

[12] List of Fisheries, 86 Fed. Reg. 3,028 (Jan. 14, 2021), https://www.federalregister.gov/documents/2021/01/14/2021-00570/list-of-fisheries-for-2021.

serious injury of marine mammals is one that is by itself responsible for the annual removal of 50 percent or more of any stock's potential biological removal level."[13] In particular, NMFS points to harms caused by lobster gear to the North Atlantic right whales.

42.     Thus, contrary to Red Lobster's claims, its Maine Lobster Products do not meet the highest standards of sustainability.  In reality, they are sourced from suppliers that have used environmentally destructive practices that threaten endangered populations of North American right whales.

**C.     Contrary to Red Lobster's Sustainability Representations, Its Shrimp Products Are Sourced from Suppliers That Use Environmentally Destructive and Inhumane Practices.**

43.     Red Lobster's Shrimp Products are made with shrimp sourced from Indonesia, Vietnam, India, and China.

44.     Shrimp farming in Indonesia, Vietnam, India, and China utilizes unsustainable and inhumane high-density industrial farming methods to increase production.[14]

---

[13] 50 CFR § 229.2.

[14] *See, e.g.*, Ben Fisher, *You Should Never Eat Imported Farm-Raised Shrimp. Here's Why*, Mashed (July 25, 2020 6:39 A.M.; updated Dec. 13, 2020 8:18 P.M.), https://www.mashed.com/230219/you-should-never-eat-imported-farm-raised-shrimp-heres-why/; Melissa Clark, *What Are We Supposed to Think About Shrimp?*, NY Times (Oct. 15, 2019; updated Nov. 8, 2019), https://www.nytimes.com/2019/10/15/dining/shrimp-sourcing-united-states.html;

45.     Due to rampant overcrowding in the crowded ponds used for shrimp farming, and to the corresponding stress of increased stocking density upon on a shrimp's immune system, severe disease outbreaks on shrimp farms are common on industrial shrimp farms around the world.[15]

46.     Shrimp farms—especially in the regions from which shrimp for Red Lobster's Shrimp Products are sourced—frequently overuse antibiotics to prevent these disease outbreaks. Farmers also use chlorine-based disinfectants, with one survey of shrimp farmers in Vietnam finding that 90 percent of farmers relied on chemical disinfectants.[16]

---

Malcolm Bedell, *What You Need To Know Before You Eat Another Bite Of Shrimp*, Mashed (Apr. 8, 2019 3:20 P.M.), https://www.mashed.com/149791/what-you-need-to-know-before-you-eat-another-bite-of-shrimp/; Allison Guy, *5 Facts that Will Make You Think Twice about Eating Imported, Farm-Raised Shrimp*, Oceana (Feb. 14, 2017), https://oceana.org/blog/5-facts-will-make-you-think-twice-about-eating-imported-farm-raised-shrimp; Eli Penberthy, *Unsustainable Shrimp Farming Degrading the Environment, Posing Health Risks*, Cornucopia Institute (July 3, 2013), https://www.cornucopia.org/2008/01/unsustainable-shrimp-farming/; Alister Doyle, *Mangroves under threat from shrimp farms: U.N.*, Reuters (Nov. 14, 2012 2:50 P.M.), https://www.reuters.com/article/us-mangroves/mangroves-under-threat-from-shrimp-farms-u-n-idUSBRE8AD1EG20121114; *Tiny shrimp leave giant carbon footprint: scientist*, PhysOrg (Feb. 18, 2012), https://phys.org/news/2012-02-tiny-shrimp-giant-carbon-footprint.html; *see also infra* notes 21-25.

[15] *Natural Resource Efficiency in Farmed Shrimp*, World Wildlife Fund, https://seafoodsustainability.org/aquaculture/farmed-shrimp/resource-use/ (last visited June 11, 2021).

[16] Tran Thi Kim Chi et al., *Use Practices of Antimicrobials and Other Compounds by Shrimp and Fish Farmers in Northern Vietnam,* 7 Aquaculture

15          CLASS ACTION COMPLAINT

47.     The combination of organic waste, chemicals, and antibiotics from shrimp farms like these contaminate groundwater, in turn significantly reducing the size and diversity of fish populations that the ecosystems can support. The use of harmful chemical contaminants is especially prevalent in the regions from which Red Lobster sources shrimp for the Shrimp Products. Researchers in Vietnam, for example, found that fish diversity was 35 percent lower in areas where shrimp wastewater was discharged.[17]

48.     Shrimp farm expansion in Southeast Asia is the single largest driver of destruction of mangroves.[18]

49.     In addition to bolstering biodiversity and protecting coastal areas from storms and erosion, mangroves provide substantial carbon sequestration. Researchers have calculated that the mangrove deforestation involved in the production of a single shrimp dinner produces greenhouse gas emissions equivalent

---

Reps.                    40                    (Aug.                    2017), https://www.sciencedirect.com/science/article/pii/S2352513417300029.

[17] Van Trai Nguyen et al., *Water Pollution Concerns in Shrimp Farming in Vietnam: A Case Study of Can Gio, Ho Chi Minh City*, 3.2 Int'l J. Env't, Cultural, Econ., and Soc. Sustainability: Ann. Rev. 129 (Jan. 2006), https://www.researchgate.net/publication/262014657_Water_pollution_concerns_i n_shrimp_farming_in_Vietnam_A_case_study_of_Can_Gio_Ho_Chi_Minh_City.

[18] J. Boone Kauffman et al., *The Jumbo Carbon Footprint of a Shrimp: Carbon Losses from Mangrove Deforestation*, 15 Frontiers in Ecology & Env't 183 (Apr. 2017), https://esajournals.onlinelibrary.wiley.com/doi/abs/10.1002/fee.1482.

16          CLASS ACTION COMPLAINT

to a road trip from New York to Los Angeles.[19]

50. Monterey Bay Aquarium's Seafood Watch ("Seafood Watch") generally warns consumers to avoid various shrimp products from Indonesia, Vietnam, India, and China due to harmful environmental impacts and overuse of antibiotics.[20]

51. Specifically, Red Lobster sources Pacific Whiteleg Shrimp from Indonesia, despite the fact that Seafood Watch concluded that such shrimp should generally be avoided due to "poor management of cumulative environmental impacts from effluent discharge," as well as "the widespread use of several antibiotics [that] has led to the development of strains of bacteria that are resistant to medicines that are highly or critically important to human health."[21] Seafood Watch further found that these issues are exacerbated by "weak regulatory structures and lax enforcement."[22]

52. Red Lobster also sources Pacific Whiteleg Shrimp from Vietnam. Seafood Watch also found such shrimp from Vietnam should generally be avoided

---

[19] *See id.*
[20] *See also supra* note 14.
[21] *Recommendation: Whiteleg Shrimp*, *Indonesia*, Monterey Bay Aquarium Seafood Watch https://www.seafoodwatch.org/recommendation/shrimp/red-shrimp-whiteleg-shrimp-indonesia-ponds?species=156 (last visited June 11, 2021).
[22] *Id.*

because shrimp "farming in Vietnam has historically contributed to large amounts of mangrove loss," and "import data from the U.S. and European Union shows that illegal antibiotic use is occurring."[23]

53.   Red Lobster also sources Pacific Whiteleg Shrimp from China, notwithstanding a finding by Seafood Watch that such shrimp should generally be avoided due to "poor management of cumulative environmental impacts from effluent discharge" and environmental regulations that are "poorly implemented and enforced" which has led to "ongoing use of banned antibiotics and antimicrobials."[24]

54.   Red Lobster also sources Pacific Whiteleg Shrimp from India, even though Seafood Watch determined that such shrimp should generally be avoided due to inadequate data concerning environmental impacts and antibiotic use, with a likelihood that "antibiotics listed as critically important to human health are

---

[23] *Recommendation: Whiteleg Shrimp*, *Vietnam*, Monterey Bay Aquarium Seafood Watch, https://www.seafoodwatch.org/recommendation/shrimp/red-shrimp-whiteleg-shrimp-vietnam-intensive-pond?species=156 (last visited June 11, 2021).

[24] *Recommendation: Whiteleg Shrimp*, *China*, Monterey Bay Aquarium Seafood Watch https://www.seafoodwatch.org/recommendation/shrimp/red-shrimp-whiteleg-shrimp-china-ponds?species=156 (last visited June 11, 2021)

used."[25]

55.     Importantly, even shrimp farms from these regions that achieve "Best Aquaculture Practices" ("BAP") certification do not conform to the "**highest** standards" promised by Red Lobster. "In a comparison of marine aquaculture standards published [in 2011] by the Seafood Ecology Research Group at the University of Victoria in Canada, the GAA-BAP standard was ranked in the bottom half of 20 aquaculture standards . . . ."[26]

56.     BAP standards are promulgated by the Global Aquaculture Alliance, an organization led by the farmed seafood industry.[27] Red Lobster itself is a "founding member" of the Global Aquaculture Alliance and even "helped establish

---

[25] *Recommendation: Whiteleg Shrimp*, *India*, Monterey Bay Aquarium Seafood Watch        https://www.seafoodwatch.org/recommendation/shrimp/red-shrimp-whiteleg-shrimp-india-ponds?species=156 (last visited June 11, 2021).

[26] Marc Gunther, *Shrimp Farms' Tainted Legacy Is Target of Certification Drive*,       Yale       Env't       360       (Aug.       6,       2012), https://e360.yale.edu/features/shrimp_farms_tainted_legacy_is_target_of_certification_drive ("Because the GAA-BAP certification applies to processors, as well as shrimp farms, companies like Darden [Red Lobster's former owner], which buys about $750 million worth of seafood a year, can claim that '100 percent of the aquacultured shrimp processors that supply Darden are certified.' Note the reference to processors, and not farms, where the environmental footprint of aquaculture is greater.").

[27] *Id.*; Global Aquaculture Alliance, https://www.aquaculturealliance.org/ (last visited June 11, 2021).

guidelines for best practices and aquaculture certifications."[28]

57. As one example of why BAP certification falls short of the "highest standards," BAP standards do not include effective measures to control the use of antibiotics or other chemicals—meaning that, among other shortcomings, these farms may still use, in unrestricted amounts, antibiotics that are critically important to human health.[29]

58. Consumers also reasonably perceive "sustainable" to mean "produced according to higher animal welfare standards." But shrimp farms in each of the aforementioned countries, from which Red Lobster sources shrimp for its Shrimp Products, perform eyestalk ablation, an unnecessary and inhumane practice in which the eyestalk gland of female shrimps is macerated or destroyed to stimulate

---

[28] *Seafood with Standards*, Red Lobster, https://www.redlobster.com/our-story/seafood-with-standards/our-beliefs (last visited June 11, 2021).
[29] *E.g.*, *Best Aquaculture Practices Certified: Seafood*, FoodPrint, https://foodprint.org/eating-sustainably/food-label-guide/food-label-guide-seafood/bap-certified-seafood/ (last visited June 11, 2021).

spawning. [30] Eyestalk ablation increases shrimp vulnerability to disease. [31] Painkillers are not used during eyestalk ablation, resulting in a cruel and traumatic experience that leaves the shrimp disoriented and in pain.[32]

59. In addition to practicing eyestalk ablation, shrimp farms in the countries where Red Lobster sources from routinely subject shrimp to other inhumane conditions.

60. For example, India, Indonesia, Vietnam, and China all lack enforceable water quality standards.[33] Accordingly, shrimp from farms in these regions routinely suffer significant stress and increased mortality.

61. According to the Charity Entrepreneurship Shrimp Welfare Report,

---

[30] Lauren Kramer, *Innovation Award 2020 finalist: Simao Zacarias' shrimp eyestalk ablation research*, Global Aquaculture Alliance (Sept. 21, 2020), https://www.aquaculturealliance.org/advocate/innovation-award-2020-finalist-simao-zacarias-shrimp-eyestalk-ablation-research/; *see also* Palaniyandi Thirunavukkarasu et al., *Procedure for Maturation and Spawning of Imported shrimp Litopenaeus vannamei in Commercial Hatchery, South East Coast of India*, 6 Fisheries & Aquaculture J. (Jan. 2015), https://www.researchgate.net/publication/289585731_Procedure_for_Maturation_and_Spawning_of_Imported_shrimp_Litopenaeus_vannamei_in_Commercial_Hatchery_South_East_Coast_of_India.

[31] *See id.*

[32] Genaro Diarte-Plata, *Eyestalk ablation procedures to minimize pain in the freshwater prawn Macrobrachium americanum*, 140 Applied Animal Behav. Sci. 172 (Sept. 2012), https://www.sciencedirect.com/science/article/abs/pii/S0168159112001761.

[33] *Id.*

21          CLASS ACTION COMPLAINT

poor water quality on farms in these regions causes high levels of stress to the shrimp who "struggle to breathe" as a result.[34]

### D. Red Lobster's Sustainability Claims Are Material and Misleading to Reasonable Consumers, and in Turn, Cause Harm.

62. As set forth above (*supra* ¶¶ 37-61), Red Lobster's Maine Lobster Products and Shrimp Products are made from lobster and shrimp sourced from suppliers using environmentally destructive and inhumane practices. Thus, Red Lobster's Sustainability Representations—which suggest to consumers that the Products are sourced in accordance with the highest environmental and animal welfare standards (*supra* ¶¶ 31-36)—are false, deceptive, and misleading.

63. Red Lobster's Sustainability Representations are material to consumers. Researchers have found that consumers seek out and are willing to pay more for products labeled as "ecologically sustainable."[35] This finding is consistent with other research that has found that consumers are willing to pay to improve animal welfare and reduce undesirable environmental effects from aquaculture.[36]

---

[34] Vicky Cox et al., *Shrimp Welfare*, Charity Entrepreneurship (Aug. 2020) https://www.charityentrepreneurship.com/uploads/1/0/7/2/10726656/shrimpwelfare.pdf.

[35] McClenachan et al., *supra* note 8.

[36] Ingrid Olesen et al., *Eliciting Consumers' Willingness to Pay for Organic and Welfare-Labelled Salmon in a Non-Hypothetical Choice Experiment*, 127 Livestock Sci. 218 (Feb. 2010), https://pubag.nal.usda.gov/catalog/775401.

64.     Red Lobster's conduct in marketing and advertising the Products with Sustainability Representations has deceived and/or is likely to deceive the public. Consumers have been deceived into believing that the Products are made from lobster and shrimp sourced in accordance with the highest environmental and animal welfare standards.

65.     Consumers lack the information and scientific knowledge necessary to determine whether the Products are in fact "sustainable" or sourced to the "highest standards" and to know or to ascertain the true quality of the Products.

66.     Reasonable consumers must and do rely on Red Lobster to report honestly whether the lobster and shrimp used in the Products are sourced from suppliers that use environmentally destructive and inhumane practices.

67.     Red Lobster knows that the Products were marketed with Sustainability Representations. Red Lobster also knows how the Products are sourced and produced. Red Lobster thus knows, or should know, the facts demonstrating that the Products were falsely and deceptively marketed and advertised.

68.     In making the false, misleading, and deceptive representations at issue, Red Lobster also knows and intends that consumers will choose to buy, and pay the requested price for, products promoted with Sustainability Representations, furthering Red Lobster's private interest of increasing sales of its products at the

1  requested prices and decreasing the sales of its competitors' products that are

2  truthfully marketed.

3      69.    Red Lobster intends for consumers to rely on its representations, and

4  reasonable consumers do in fact so rely. Indeed, Red Lobster goes so far as to assure

5  consumers that its Sustainability Representations are "more than just words on our

6  menu," and instead a "promise" on which consumers can rely "that all of the

7  seafood we serve is sourced to the highest standards." As a result of its false and

8  misleading marketing and advertising, Red Lobster has been and is able to sell the

9  Products to consumers in the State of California and to realize sizeable profits.

10      70.    Plaintiff Marshall and members of the Class described below relied on

11  Red Lobster's Sustainability Representations when purchasing the Products.

12  Plaintiff Marshall and members of the Class described below paid the requested

13  price for the Products based upon the misrepresentations, and they purchased

14  Products they otherwise would not have bought had they known the truth about the

15  environmentally destructive and inhumane practices used by Red Lobster's

16  suppliers. As a result, Plaintiff Marshall and Class members suffered an injury.

17  Contrary to representations in the Products' marketing and advertising, consumers

18  received Products that did not meet the Sustainability Representations.

19      71.    Had Red Lobster not made the false, misleading, and deceptive

20  representations, Plaintiff Marshall and the Class members would not have been

CLASS ACTION COMPLAINT

willing to pay the same amount for the Products they purchased and/or would not have been willing to purchase the Products.

72.     Upon information and belief, Red Lobster has profited enormously from the falsely and deceptively marketed Products.

## CLASS ALLEGATIONS

73.     Plaintiff Marshall re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

74.     Plaintiff Marshall brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals within the United States (the "Class") defined as follows: All consumers who purchased Red Lobster's Maine Lobster Products and/or Shrimp Products in California within the applicable statute of limitations, and until the date of class certification (the "Class Period").

75.     Excluded from the Class are (1) Red Lobster, any entity or division in which Red Lobster has a controlling interest, and Red Lobster's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

76.     Included in the Class, to the extent necessary, are (1) a subclass of all persons who purchased the Maine Lobster Products in California during the Class Period (the "Maine Lobster Subclass"), and (2) a subclass of all persons who

purchased the Shrimp Products in California during the Class Period (the "Shrimp Subclass").

77. There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a) whether Red Lobster is responsible for the advertising at issue;

(b) whether Red Lobster's practices and representations related to the marketing and sales of its Products were unfair, deceptive, fraudulent, and/or unlawful in any respect, in violation of California law;

(c) whether Red Lobster's conduct as set forth above injured, and may continue to injure, Plaintiff Marshall and Class members.

78. Plaintiff Marshall's claims are typical of the claims of the Class. Plaintiff Marshall is a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by Red Lobster's conduct and are owed the same relief, as alleged in this Complaint. Members of the Class are ascertainable from Plaintiff Marshall's description of the Class, from Red Lobster's records, and from records of third parties accessible through discovery.

79. Plaintiff Marshall will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiff Marshall will vigorously pursue the claims of the Class and Subclasses.

CLASS ACTION COMPLAINT

80.     Plaintiff Marshall has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff Marshall's counsel have successfully represented plaintiffs in complex class actions and currently represent plaintiffs in similar complex class action lawsuits involving false advertising.

81.     A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Marshall and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case and as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Marshall's and the Class members' claims together is manageable.

83.     No member of the Class has a substantial interest in individually

CLASS ACTION COMPLAINT

1    controlling the prosecution of a separate action.

2          84.    The prerequisites to maintaining a class action for equitable relief are

3    met, because Red Lobster—by representing that the Maine Lobster Products and

4    the Shrimp Products are sustainable despite the fact that they were sourced from

5    suppliers who use environmentally harmful and inhumane practices—has acted or

6    refused to act on grounds generally applicable to the Class, thereby making

7    appropriate final equitable relief with respect to the Class as a whole.

8          85.    The prosecution of separate actions by members of the Class would

9    create a risk of establishing inconsistent rulings and/or incompatible standards of

10   conduct for Red Lobster. Additionally, individual actions could be dispositive of

11   the interests of the Class even where certain Class members are not parties to such

12   actions.

13         86.    Red Lobster's conduct is generally applicable to the Class as a whole,

14   and Plaintiff Marshall seeks, *inter alia*, equitable remedies with respect to the Class

15   as a whole. As such, Red Lobster's systematic policies and practices make

16   declaratory relief appropriate with respect to the Class as a whole.

17         87.    Plaintiff Marshall knows of no difficulty that will be encountered in

18   the management of this litigation that would preclude its maintenance of a class

19   action.

20

                                   28        CLASS ACTION COMPLAINT

## CAUSES OF ACTION

### COUNT I
**Unfair and Deceptive Acts and Practices
in Violation of the California Consumer Legal Remedies Act**

88.     Plaintiff Marshall incorporates by reference and realleges herein all paragraphs alleged above.

89.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

90.     Plaintiff Marshall and other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought Red Lobster's Products for personal, family, or household purposes.

91.     Plaintiff Marshall, the other members of the Class, and Red Lobster have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

92.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Red Lobster in transactions intended to result in, and which did result in, the sale of goods to consumers.

93.     As alleged more fully above, Red Lobster has violated the CLRA by falsely representing to Plaintiff Marshall and the other members of the Class that the Products are, *inter alia*, "sustainable" and "sourced to the highest standards."

29          CLASS ACTION COMPLAINT

94.     As a result of engaging in such conduct, Red Lobster has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

95.     CLRA § 1782 NOTICE. On March 29, 2021, a CLRA demand letter was sent on behalf of Plaintiff Marshall to Red Lobster via certified mail, which provided notice of Red Lobster's violation of the CLRA and demanded that within thirty (30) days from that date, Red Lobster correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Red Lobster refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Red Lobster received the letter on behalf of Plaintiff Marshall on April 1, 2021 but has failed to comply with the letters. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Marshall, on behalf of herself and the Class, seeks compensatory damages, punitive damages, injunctive relief, and restitution of any ill-gotten gains due to Red Lobster's acts and practices.

## COUNT II
### Violations of California's False Advertising Law

96.     Plaintiff Marshall incorporates by reference and realleges herein all paragraphs alleged above.

97.     As alleged more fully above, Red Lobster has falsely advertised the Products with the Sustainability Representations.

98.     At all material times, Red Lobster engaged in a scheme of offering the Products for sale to Plaintiff Marshall and the other members of the Class through, *inter alia*, Red Lobster's website and in-restaurant menu.

99.     The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*.

100.     Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL, in that such promotional materials were intended as inducements to purchase the Red Lobster Products and are statements disseminated by Red Lobster to, and intended to reach, Plaintiff Marshall and the other members of the Class. Red Lobster knows, or in the exercise of reasonable care should know, that these representations are misleading and deceptive.

101.     The above-described acts of Red Lobster did deceive, were likely to deceive, and are likely to continue deceiving reasonable consumers, including Plaintiff Marshall and the other members of the Class, by obfuscating the nature and sourcing of the Products, in violation of the "misleading" prong of the FAL.

102.     Plaintiff Marshall and the other members of the Class have suffered injury in fact and have lost money or property as a result of Red Lobster's violations

31          CLASS ACTION COMPLAINT

of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*

103.    Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff Marshall and the Class seek an order of this Court that includes, but is not limited to, requiring Red Lobster to:

(a) provide restitution to Plaintiff and the other members of the Class;

(b) cease its unlawful and deceptive acts; and

(c) pay the attorney fees and costs of Plaintiff Marshall and the Class.

## COUNT III
### Violation of California's Unfair Competition Law

104.    Plaintiff Marshall incorporates by reference and realleges herein all paragraphs alleged above.

105.    By committing the acts and practices alleged herein, Red Lobster has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

106.    Red Lobster has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

(a) Violations of the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9), as alleged above; and

(b) Violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged

above.

107.    Red Lobster's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

108.    As more fully described above, Red Lobster's misleading marketing and advertising of the Red Lobster Products is likely to deceive reasonable consumers. Indeed, Plaintiff Marshall and the other members of the Class were deceived regarding the "sustainable" qualities of the Products, as Red Lobster's marketing and advertising of the Products misrepresent or omit the true facts concerning the benefits of the Products. Those acts are fraudulent business practices.

109.    Red Lobster's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

110.    Plaintiff Marshall and the other members of the Class suffered injury by virtue of buying the Red Lobster Products that they would not have purchased, or would not have paid the requested prices for, absent Red Lobster's unlawful, fraudulent, and unfair marketing and advertising.

111.    There is no benefit to consumers or competition from deceptively marketing products like the Red Lobster Products, which purport to be "sustainable" and "sourced to the highest standards" when these unqualified claims are false.

112.   Plaintiff Marshall and the other members of the Class had no way of reasonably knowing that the Red Lobster Products they purchased were not as marketed or advertised. Thus, they could not have reasonably avoided the injury each of them suffered.

113.   The consequences of Red Lobster's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Marshall and the other members of the Class.

114.   Pursuant to California Business and Professional Code § 17203, Plaintiff Marshall and the members of the Class seek an order of this Court that, *inter alia*, requires Red Lobster to:

    (a) provide restitution to Plaintiff Marshall and the other members of the Class;

    (b) disgorge all revenues obtained as a result of violations of the UCL;

    (c) cease their unlawful and deceptive acts; and

    (d) pay the attorneys' fees and costs of Plaintiff Marshall and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Marshall respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

CLASS ACTION COMPLAINT

A. An order certifying the proposed Class (and/or Subclasses as deemed necessary); appointing Plaintiff Marshall as representative of the Class (and/or Subclasses as deemed necessary); and appointing Plaintiff Marshall's undersigned counsel as class counsel for the Class (and/or Subclasses as deemed necessary);

B. A declaration that Red Lobster is financially responsible for notifying Class members of the pendency of this suit;

C. An order enjoining Red Lobster's unlawful and deceptive acts;

D. Monetary damages for members of the Class pursuant to California Civil Code § 1780;

E. Monetary damages and statutory damages in the maximum amount provided by law;

F. Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

G. An order awarding Plaintiff Marshall and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H. Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff Marshall hereby demands a trial by jury.

CLASS ACTION COMPLAINT

DATED: June 11, 2021

                              **LAW OFFICE OF MATTHEW STRUGAR**


                               _/s/ Matthew Strugar_____
                              Matthew Strugar (SBN 232951)
                              matthew@matthewstrugar.com
                              3435 Wilshire Blvd., Suite 2910
                              Los Angeles, CA 90010
                              (323) 696-2299


                              **RICHMAN LAW & POLICY**

                              _Jay Shooster_____
                              Jay R. Shooster (*pro hac vice* forthcoming)
                              jshooster@richmanlawpolicy.com
                              535 Mission Street
                              San Francisco, CA 94105
                              Telephone: (718) 705-4579
                              Facsimile: (718) 228-8522

                              *Attorneys for Plaintiff Marshall*
                              *and Proposed Class*


                              36        CLASS ACTION COMPLAINT