Bethany Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendants*
RED LOBSTER MANAGEMENT LLC and
RED LOBSTER HOSPITALITY LLC

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Dezzi Rae Marshall, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Red Lobster Management LLC and Red Lobster Hospitality LLC,<br><br>Defendants. | Case No.: 2:21-cv-04786-JAK-MAR<br><br>[Assigned to Hon. John A. Kronstadt]<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date: March 21, 2022<br>Time: 8:30 a.m.<br>Courtroom: 10B |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................... 1

II.   Background........................................................................ 2

    A.    Red Lobster. ............................................................... 2

    B.    Plaintiff's FAC. ........................................................... 3

III.  ARGUMENT ..................................................................... 4

    A.    Dismissal Standard Under Rules 12(b)(6) and 9(b). .......... 4

    B.    Plaintiff's FAL, CLRA, and UCL Claims Fail to State a Claim. ........ 5

    C.    Plaintiff Lack Standing to Seek Injunctive Relief. ........................ 20

    D.    Plaintiff's Claim for Punitive Damages Must Be Dismissed. ........... 22

IV.   CONCLUSION ................................................................. 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple*,
411 F. Supp. 3d 541 (N.D. Cal. 2019)..................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................5, 23

*Beasley v. Conagra Brands, Inc.*,
374 F. Supp. 3d 869 (N.D. Cal. 2019)....................................................7

*Beasley v. Lucky Stores, Inc.*,
400 F. Supp. 3d 942 (N.D. Cal. 2019)....................................................7

*Becerra v. Dr. Pepper/Seven Up*,
945 F.3d 1225 (9th Cir. 2019).......................................12, 14, 15, 17

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007) .........................................................................5, 23

*Bouncing Angels, Inc. v. Burlington Ins. Co.*,
2017 WL 1294004 (C.D. Cal. Mar. 20, 2017) (Bernal, J.) ...................23

*Center for Biological Diversity, et al. v. Wilbur Ross, et al.*,
Civ. Action No. 18-112 (D.D.C. April 9, 2020) ...................................10

*Clark v. Westbrae Nat., Inc.*,
2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) .......................15, 16, 18

*Clark v. Westbrae Nat., Inc.*,
2021 WL 1580827 (N.D. Cal. Apr. 22, 2021) ...........................15, 16

*Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc.*,
911 F.2d 242 (9th Cir.1990) ...............................................................19

*Cordes v. Boulder Brands USA*,
2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ....................................22

*Davidson v. Kimberly-Clark*,
889 F.3d 956 (9th Cir. 2018)..............................................................22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Ebner v. Fresh*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................ 11

*Elias v. Hewlett-Packard*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ....................................................... 11, 21

*Freedom Transp., Inc. v. Travelers Companies, Inc.*,
   2016 WL 7496731 (C.D. Cal. Mar. 24, 2016) (Bernal, J.) ............................... 23

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir.1995) ......................................................................... 11, 13

*Gitson v. Trader Joe's Co.*,
   2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) .................................................... 12

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ............................................................................. 9

*Gutierrez v. Carmax Auto Superstores California*,
   19 Cal. App. 5th 1234 (2018) ........................................................................... 14

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................ 19

*Hanna v. Walmart, Inc.*,
   2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) .................................................... 22

*Hill v. Roll Internat. Corp.*,
   195 Cal. App. 4th 1295 (2011) ......................................................................... 18

*Hodsdon v. Mars*,
   891 F.3d 857 (9th Cir. 2018) ........................................................................... 21

*Jackson v. General Mills*,
   2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) .................................................. 22

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................................... 6, 7

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ............................................................... 6

*Kelley v. Corrections Corp. of America*,
   750 F.Supp.2d 1132 (E.D. Cal. 2010) .............................................................. 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Krommenhock v. Post Foods LLC*,
  2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) .................................................. 20

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) .......................................................................... 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 22

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ............................................................................. 9

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir.1989) ...................................................................... 11, 12

*Moore v. Trader Joe's Co.*,
  2021 WL 2965445 (9th Cir. July 15, 2021) ......................................... 12, 13, 14

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir.2008) .......................................................................... 20

*In re NJOY, Inc. Consumer Class Action Litig.*,
  2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ................................................ 11

*Pelayo v. Nestle USA*,
  989 F. Supp. 2d 973 (C.D. Cal. 2013) ......................................................... 6, 12

*Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA), Inc.*,
  2014 WL 2511303 (C.D. Cal. June 3, 2014) (Stanton, J.) ............................... 24

*Spokeo v. Robins*,
  136 S. Ct. 1540 (2016) ..................................................................................... 22

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................... 22

*Sterling Drug, Inc. v. Federal Trade Commission*,
  741 F.2d 1146 (9th Cir.1984) .......................................................................... 19

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................................. 9

*Tucker v. Post Consumer Brands*,
  2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) .................................................. 15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Turman v. Turning Point of Central Calif., Inc.*,
   191 Cal.App.4th 53 (2010) ................................................................ 9

*Vess v. Ciba–Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................... 6, 11

*Wasatch Prop. Mgmt. v. Degrate*,
   35 Cal. 4th 1111 (2005) .................................................................. 14

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ......................................................... 23

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) ............................................. 6

*Yu v. Dr. Pepper Snapple Group, Inc*.,
   2020 WL 5910071 (N.D. Cal. October 6, 2020) ..............15, 16, 17, 22

*Yumul v. Smart Balance*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................ 7, 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................... 5

Cal. Bus. & Prof. Code § 17500, *et seq.* ............................................ 5

Cal. Civ. Code §§ 1750-1785 (2) ....................................................... 5

Cal. Civ. Code § 3294(a) ................................................................. 23

CLRA ..........................................................................................*passim*

EMCA ................................................................................... 18, 19

Endangered Species Act ................................................................. 10

Environmental Marketing Claims Act ............................................... 18

FAL ...................................................................................6, 7, 11, 21

UCL .........................................................................................*passim*

**Rules**

Rule 9(b) ..................................................................................*passim*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Rule 12(b)(1)..................................................................................................22

Rule 12(b)(6)................................................................................1, 5, 19, 23

Rule 12(f)......................................................................................................23

**Other Authorities**

16 C.F.R. § 260.4(b) ......................................................................................18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2    **PLEASE TAKE NOTICE** that at the date, time, and place noticed above,

3    Defendants Red Lobster Management LLC and Red Lobster Hospitality LLC

4    ("Defendants"), through its counsel or record, pursuant to Rule 12(b)(6) of the Federal

5    Rules of Civil Procedure, hereby does move to dismiss Plaintiff Dezzi Rae Marshall's

6    ("Plaintiff") First Amended Complaint ("FAC") for failure to state a claim upon

7    which relief can be granted (the "Motion").

8        This motion will be based upon this Notice of Motion and Motion, the

9    Memorandum of Points and Authorities, the papers and pleadings filed in this action,

10   and such other papers as may be filed with the Court.

11       This motion is made following the conference of counsel pursuant to L.R. 7-3,

12   which took place on August 17, 2021.

13

14                                    Respectfully submitted,

15   Dated:  November 4, 2021        **BAKER & HOSTETLER LLP**

16

17                            By:    */s/ Bethany G. Lukitsch*
                                      Bethany G. Lukitsch
18                                    Kamran B. Ahmadian

19                                    *Attorneys for Defendants*
                                      RED LOBSTER MANAGEMENT
20                                    LLC and RED LOBSTER
                                      HOSPITALITY LLC

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Red Lobster is committed to serving sustainably sourced seafood from its restaurants across the United States. It takes its promise to provide "Seafood with Standards" seriously, developing long-term relationships with seafood suppliers around the world, sourcing from suppliers that share its devotion for sustainable fisheries, and utilizing either third-party certification programs or suppliers that participate in established fishery and aquaculture improvement projects. Red Lobster details its sustainability efforts and standards on its website and includes an express invitation on its printed menu for customers to visit its website to learn more. *See* FAC ¶ 5.

Dissatisfied with Red Lobster's sustainability program, Plaintiff brings a putative class action asserting claims of false and misleading advertising. Plaintiff asserts that the printed commitments on Red Lobster's in-restaurant menu do not meet her own subjective "sustainability standards" with regards to Red Lobster's Maine Lobster and shrimp sourced from Southeast Asian countries. *See* FAC ¶ 13. Plaintiff does not, and cannot, however, plead facts demonstrating that Red Lobster failed to meet its *own* promises as set forth on its in-restaurant menu or referenced in detail on its website.

In truth, the assurances of "sustainability" on Red Lobster's printed menu are accurate and are not misleading to reasonable consumers, and Plaintiff does not plead a single fact to the contrary. Moreover, Plaintiff's generalized allegations fail to meet Rule 9(b)'s particularity requirements for claims sounding in fraud. Because Plaintiff fails to state a cognizable claim, the FAC should be dismissed in its entirety with prejudice.

\\
\\
\\

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## II.    BACKGROUND

### A.    Red Lobster.

Red Lobster is a world-renowned seafood restaurant well known by consumers for its seasonal campaigns such as "Lobsterfest" and "Endless Shrimp."  Founded in 1968 as a single family-owned restaurant, Red Lobster has grown to over 700 locations in the United States and internationally.

Red Lobster is committed to creating and upholding seafood guidelines across the industry and is proud of its ongoing efforts to set and maintain aquaculture standards.  Towards that end, in early 2018, Red Lobster launched its "Seafood with Standards" initiative, encapsulating its program with three words: "Traceable," "Sustainable," and "Responsible."  *See* FAC ¶¶ 4-5.  Red Lobster included information in its menu about the initiative and invited customers to learn more about the program by visiting Red Lobster's "Seafood with Standards" website, which detailed the factual bases for its claims of traceability, sustainability, and responsibility.[1]  *Id.*

In addition, the website outlines the history of Red Lobster's commitment to sustainability, the specific organizations it has joined, the standards it follows and the sourcing information for its lobster, crab, fish, and shrimp.  *See Red Lobster,* https://www.redlobster.com/our-story/seafood-with-standards/sourcing-our-seafood (last visited October 28, 2021).  For instance, the website explains that Red Lobster co-founded the Global Aquaculture Alliance ("GAA") in 1997 after recognizing the need for an international non-governmental organization to set the highest aquaculture standards.  *See id.*  Through the GAA, Red Lobster helped develop the Best Aquaculture Practices ("BAP") certification which is "the world's only third-party

---

[1] "Traceable – All our seafood is 100% traceable to a known and trusted source; Sustainable – We only source from suppliers who follow industry best practices; Responsible – We support and follow regulatory efforts that manage fish populations and mandate our suppliers comply with all applicable laws."  *See Red Lobster,* https://www.redlobster.com/our-story/seafood-with-standards/our-beliefs    (last visited October 28, 2021).

certification program encompassing the entire aquaculture production chain: farms, processing plants, hatcheries and feed mills." *Id.*

Red Lobster's "Seafood with Standards" website offers interactive and up-to-date information. Customers can obtain specific information that is updated quarterly about the seafood they are interested in consuming. *Id.* For example, if a consumer clicks on shrimp on the sourcing pages, Red Lobster informs its customers that its farm-raised shrimp are BAP certified and "eco-certified by a third-party program or engaged in a credible Fishery Improvement Project (FIP) or Aquaculture Improvement Project (AIP)." *See Red Lobster*, https://www.redlobster.com/our-story/seafood-with-standards/sourcing-our-seafood#shrimp (last visited October 28, 2021). The location of origin for Red Lobster's shrimp also is indicated on a map. *Id.* In short, reasonable consumers interested in learning more about Red Lobster's standards have a wealth of information available to them.

### B. Plaintiff's FAC.

On June 11, 2021, Plaintiff filed her initial class action complaint asserting similar claims against four Red Lobster entities: Red Lobster Management LLC, Red Lobster Seafood Co., LLC, Red Lobster Restaurants LLC, and Red Lobster Hospitality LLC. *See* Doc. No. 1. After a meet and confer between the parties, Plaintiff agreed to file an amended complaint dismissing Red Lobster Seafood Co., LLC and Red Lobster Restaurants LLC. *See* Doc. No. 19.

On September 20, 2021, Plaintiff filed the operative FAC alleging, *inter alia*, violations of California consumer protection laws related to Red Lobster's sustainability claims printed on its menu. *See generally*, FAC. Plaintiff alleges that on January 4, 2020 she purchased three different combination meals, Red Lobster's "Family Feast," "Lobster Lover's Dream," and "Ultimate Feast," during a visit to a Red Lobster restaurant in Valencia, California. *Id.* at ¶ 23. Plaintiff further alleges that her purchases were made in reliance on the restaurant's "Sustainability Representations" printed on its menu. *Id.* at ¶¶ 24-26.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff further avers that she only was willing to purchase and pay the requested prices for Red Lobster's lobster and shrimp products because of her "expectation" that the products were sustainable and sourced "in accordance with the highest environmental and animal welfare standards, and thus, were not sourced from suppliers that use environmentally harmful and inhumane practices." *Id.* at ¶ 25. While Plaintiff asserts that she read and relied upon the "Sustainability Representations" in the printed menu, and that she cares deeply about sustainable seafood practices, she does not claim to have viewed or relied upon any information provided on Red Lobster's website, or in any other advertising related to Red Lobster. See *id.* at ¶¶ 4-5, 13, 24.

The FAC asserts three causes of action on behalf of a putative class of "California" purchasers: (1) California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA"), (2) False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), and (3) Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), all based solely on the veracity of the Sustainability Representations that appear in Red Lobster's printed menu. *Id.* at ¶¶ 73, 87-113.

## III. ARGUMENT

Plaintiff does not–and cannot–meet the heightened pleading standard required for claims sounding in fraud, and otherwise fails to plead facts establishing that a reasonable consumer would find Red Lobster's "Sustainability Representations" misleading or inaccurate.

### A. <u>Dismissal Standard Under Rules 12(b)(6) and 9(b).</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court generally accepts a complaint's allegations as true and construes those allegations in the light most favorable to the

plaintiff, "a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Pelayo v. Nestle USA*, 989 F. Supp. 2d 973, 977 (C.D. Cal. 2013) (Walter, J.) (citations omitted).

Claims sounding in fraud, such as the FAL, UCL and CLRA claims pled here, also must satisfy the Rule 9(b) particularity standard. *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The plaintiff must plead "the who, what, when, where, and how of the misconduct charged," as well as facts explaining *why* the statement was false when made. *Id.* at 1106; *see Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009).

## B.   Plaintiff's FAL, CLRA, and UCL Claims Fail to State a Claim.

Plaintiff's FAC fails because (1) it lacks the requisite details of "who," "what," "how," and "when" to satisfy Rule 9(b), (2) Plaintiff's unique interpretation of the statements on Red Lobster's menu fail the "reasonable consumer" test, (3) the challenged statements are not actionable, and (4) the UCL claim still fails even under the UCL's unlawful and unfair prongs. These deficiencies are addressed in turn below.

1.   *The FAC Lacks Sufficient Particularity to Support Fraud-Based Claims.*

Plaintiff relies on generalized pleadings that reference irrelevant surveys and overbroad assumptions of sourcing practices, but never establishes the specific facts required to establish the who, what, when, and how required under Rule 9(b) to support Plaintiffs' fraud-based claims.

The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA, UCL, and FAL that sound in fraud. *See, e.g.*, *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess,* 317 F.3d at 1103–04; *see also Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911 (N.D. Cal. 2020) (Rule 9(b) applies to FAL and UCL claims); *Keegan v. Am. Honda*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Motor Co.,* 838 F. Supp. 2d 929, 937 (C.D. Cal. 2012).  Plaintiff therefore cannot assert a cognizable claim for her three causes of action unless she pleads specific facts establishing (1) "when" she was exposed to Red Lobster's allegedly misleading sustainability statements—including when during the putative class period these statements allegedly were made and "what" those statements were; (2) "who" allegedly made the misleading statements; and (3) "how" the alleged statements are, in fact, misleading.  She fails on all accounts.

First, Plaintiff fails to establish "when" she first was exposed to the Red Lobster Sustainability Representations upon which she bases her CLRA, UCL, and FAL claims.  Specifically, "when" during the alleged class period Red Lobster made the statements she saw on the menu, and whether those statements remained consistent throughout the putative class period.  In analyzing the relevant "when" through the lens of Rule 9(b), the measure is "either when the allegedly misleading statement was made or when it was viewed or heard by the plaintiff, not when it resulted in a purchase."  *Kearns,* 567 F.3d at 1126.

Here, Plaintiff only states the date she made the purchase and that she and other class members saw Red Lobster's "Sustainability Representations" when purchasing products in California "during any applicable statute of limitation period" and "within the class period."  FAC ¶¶ 13, 23-24.  Such conclusory allegations that a plaintiff was "exposed" to the allegedly misleading statement "within the class period" are patently inadequate.  *See, e.g., Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 955 (N.D. Cal. 2019) ("[The plaintiff's] allegations that he 'repeatedly' purchased Coffee-mate and purchased the product 'during the class period once per month' are too general to satisfy the 'when' requirement of Rule 9(b)."); *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 882 (N.D. Cal. 2019) (finding allegations showing plaintiff purchased product containing PHO "at some time during an 8.5 year window" insufficient under Rule 9(b)); *Yumul v. Smart Balance*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (Morrow, J.).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

In *Yumul*, the Court dismissed a similarly insufficiently pled complaint where the plaintiff "failed to allege *when* during the period from January 1, 2000 to the present she saw or heard the particular representations upon which her complaint is based." 733 F. Supp. 2d at 1124 (emphasis added). The plaintiff in *Yumul* only alleged that she purchased the product "repeatedly" during the class period with no specificity on which dates the purchases were made without alleging that the packaging in question remained constant during the relevant time-period, or that the plaintiff saw the challenged representations on the packaging each time she made a purchase. *Id*.

Similarly, while Plaintiff does provide a single date when she purchased three meals and allegedly saw written on-menu representations, she does not state whether this was the first time she saw the representations, when Red Lobster's "Sustainability Representations" that she saw on January 4, 2020 first appeared on a Red Lobster menu, and whether they remained consistent throughout the class period. *See* FAC ¶¶ 13, 23, 24.

The question of "when" Plaintiff and putative class members first observed the alleged "Sustainability Representations" is particularly important given that Red Lobster was not using identical language on its menu and website during the entire limitations period and in-restaurant dining throughout California was prohibited during significant portions of 2020 and 2021 due to the COVID-19 pandemic.[2]

Second, Plaintiff never establishes with requisite specificity which Red Lobster entity did what—i.e., "who" sourced the shrimp and lobster, what each was or was

---

[2] The sourcing information on Red Lobster's website is updated quarterly "to reflect seasonality and supply availability as well as current menu items." *See Red Lobster*, indicating that the menu and relevant sustainability claims change quarterly. https://www.redlobster.com/our-story/seafood-with-standards/our-beliefs (last visited August 9, 2021). Red Lobster's menus also were void of any sustainability representations during portions of the statute of limitations period. Plaintiff's generalized allegations are exacerbated by the fact that the proposed putative class includes purchasers from all over who at one point bought a shrimp or lobster meal from a California Red Lobster restaurant. There are no facts to support the notion that everyone saw the same materials Plaintiff saw.

not told, and who made the alleged misleading statements.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme."  *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (In the context of a fraud suit involving multiple defendants, plaintiffs must "*inform each defendant separately* of the allegations surrounding his alleged participation in the fraud.").  Without knowing what each entity did and knew as it relates to the "Sustainability Representations," Plaintiff cannot establish that either of the Red Lobster entities' actions were deceitful or causative, let alone deserving of punitive damages.  *See, e.g., Turman v. Turning Point of Central Calif., Inc.*, 191 Cal. App. 4th 53, 63 (2010) (allegations did not show that defendant acted with the requisite state of mind for punitive damages); *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (although scienter need not be alleged with particularity under Rule 9(b), plaintiff must still plead a sufficient factual context to render a finding as to scienter *plausible*).

    <u>Third</u>, Plaintiff does not plead "how" Red Lobster's "Sustainability Representations" are misleading.  Under Rule 9(b), a plaintiff must "set forth what is false or misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 1994).  It is here where Plaintiff's generalized allegations are perhaps most disconnected from any underlying facts.  Plaintiff alleges that Red Lobster's representations that its seafood is "sustainable, traceable, responsible" and "sourced to the highest standards" are false, but offers *no specific factual allegations* establishing their falsity.  Instead, Plaintiff wrongly relies upon sensationalized allegations about shrimp farming *generally* and cites to surveys with no connection to Red Lobster's actual practices or shrimp suppliers.  *See* FAC ¶¶ 28-34, 41-59.  This sort of generalized pleading warrants dismissal.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

But more importantly, even if true, the FAC fails to allege how the shrimp from any specific shrimp farm is not "traceable", "sustainable", or "responsible" as those terms are defined by the entirety of Red Lobster's Sustainability Representations, including its website. Indeed, Plaintiff does not explicitly allege that *every* shrimp farm in these countries uses any specific practice. Rather, Plaintiff invites the Court to *assume*—based on inartful pleading and vague generalizations—that *all* shrimp farmed in these regions are unsustainable, untraceable, or irresponsible—an assumption belied by the very Monterey Bay Aquarium Seafood Watch Guidelines Plaintiff invokes.[3]

Plaintiff's generalized allegations with respect to Red Lobster's sourcing from the Gulf of Maine Lobster Fishery fare no better. Again, Plaintiff alleges the representations are deceptive because Red Lobster sources from the Gulf of Maine Lobster Fishery which, allegedly, has the *potential to* (but not proof of) harm the North American right whale. *See* FAC ¶ 38. Plaintiff offers no explanation for her unsupported allegation that reasonable consumers interpret a label of "Sustainable. Traceable. Responsible." to mean that Red Lobster has knowledge that the fishing practices of its Main lobster suppliers has an actual, not hypothetical impact on the North American right whale.[4]

---

[3] For example, Plaintiff attacks the *general* practices of unnamed shrimp farmers *generally* within Indonesia, Vietnam, India, and China, but make no *specific* factual allegations against the practices of the *actual* shrimp farmers that supply Red Lobster. *See* FAC ¶¶ 49-52 ("[Monterey Bay Aquarium's Seafood Watch] **generally** warns consumers to avoid various shrimp products from Indonesia, Vietnam, India, and China") (emph. added); *see also, id.* ¶¶ 42, 46.

[4] Plaintiff adds one paragraph to her FAC, *see* ¶ 66, regarding undated actions regarding unspecified suppliers of Maine Lobster. These allegations lack the necessary specificity under 9(b) to establish knowledge on the part of Red Lobster, or any specific actions on the part of its suppliers of Maine Lobster. For example, the April 9, 2020 decision regarding a 2014 Biological Opinion that the Court found did not include an "incidental take statement" required by the Endangered Species Act could not have any causal link to alleged statements made to Plaintiff months before in January 2020 when she made her purchase of Lobster products. *See Center for Biological Diversity, et al. v. Wilbur Ross, et al.*, Civ. Action No. 18-112 (D.D.C. April 9, 2020).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Such broad-based allegations do not satisfy Rule 9(b)'s pleading requirement that Plaintiff allege with specificity *how* Red Lobster's shrimp farmers' and lobstermen's actual practices—as opposed to the general practices within a geographic region—are not "sustainable, traceable, responsible" and "sourced to the highest standards." *See, e.g.*, *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 540 (9th Cir.1989) ("mere conclusory allegations of fraud are insufficient"); *In re NJOY, Inc. Consumer Class Action Litig*., 2014 WL 12586074, at *6 (C.D. Cal. Oct. 20, 2014) (Morrow, J.) (Rule 9(b) requires that the facts constituting the fraud be pled with specificity; conclusory allegations are insufficient); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("A plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.").

### 2.    *The FAC Fails the Reasonable Consumer Test*

Plaintiff's UCL, CLRA, and FAL claims all use the "reasonable consumer" standard.  *See, e.g.*, *Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016) ("[C]laims under the [CLRA, UCL, and FAL] are governed by the 'reasonable consumer' test … under [which] Plaintiff must show that members of the public are likely to be deceived.") (internal citations and quotations omitted); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.") (citation omitted).  "As a result, courts often analyze these three statutes together." *Elias v. Hewlett-Packard*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (citing *Paduano v. Am. Honda Motor Co.,* 169 Cal. App. 4th 1453, 1468–73 (2009) (analyzing UCL and CLRA claims together); *Chacanaca v. Quaker Oats Co.,* 752 F.Supp.2d 1111, 1124–25 (N.D.Cal.2010) (analyzing UCL, FAL, and CLRA claims together)).

Under the "reasonable consumer" standard, a plaintiff must demonstrate at the pleading stage that a "reasonable consumer" is likely to be misled by the challenged

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

representation.  *Moore v. Trader Joe's Co.*, 2021 WL 2965445 (9th Cir. July 15, 2021).  In *Moore*, the Ninth Circuit confirmed:

> This is not a negligible burden.  To meet this standard, Plaintiff[] must demonstrate 'more than a mere possibility that the seller's [representations] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner … rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

*Id.* (int. quot. and cit. omitted); *see Becerra v. Dr. Pepper/Seven Up*, 945 F.3d 1225, 1228 (9th Cir. 2019) (The "reasonable consumer" standard "requires more than a mere possibility that [the challenged product packaging] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."); *Pelayo*, 989 F. Supp. 2d at 977-78. "Indeed, a plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore*, 2021 WL 2965445 at *4.

Moreover, a consumer that makes unreasonable leaps in logic outside the bounds of an ordinary consumer to draw conclusions of deception fails the "reasonable consumer" test. *See, e.g.*, *Gitson v. Trader Joe's Co.*, 2015 WL 9121232, at *1 (N.D. Cal.  Dec. 1, 2015) ("The reasonable consumer (indeed, even the least sophisticated consumer) does not think soymilk comes from a cow."); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003) ("Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made in Denmark.  Is it, therefore, an actionable deception to advertise 'Danish pastry' when it is made in this country? Of course not.").  In fact, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Moore*, 2021 WL 2965445 at *5 (quoting *Bell v. Publix Super Markets Inc.*, 982 F.3d 468 (7th Cir. 2020)).

Contrary to Plaintiff's assertions, a reasonable consumer *would not* be deceived by the standards and commitments promised by Red Lobster's Seafood with Standards program—all of which are explicitly outlined on its website.  Instead,

Plaintiff is attempting to substitute Red Lobster's explicit standards for a series of environmental and animal welfare standards that are within her own knowledge, but not referenced in any Red Lobster print.  *See* FAC ¶¶ 30, 35-40,41-59.  This unique interpretation of Red Lobster's statements is well outside the realm of a "reasonable consumer."  In fact, Plaintiff's hyper-specific standards (1) ignore the actual high standards and practices Red Lobster informs its customers it follows, (2) ignore the conventional understanding of what "sustainable" fishing practices means, (3) are based on irrelevant surveys, and (4) improperly rely on unreasonable inferences from inapplicable guidelines issued by the Federal Trade Commission ("FTC").

<u>First</u>, as acknowledged in the FAC, directly under the Sustainability Representations, customers are invited to "Learn more about our commitments at www.redlobster.com/SeafoodWithStandards."  FAC ¶ 5.  Red Lobster customers are not required to speculate as to what "sustainability" means, or what industry standards Red Lobster follows—all they need to do is visit the referenced website.  Even assuming *arguendo* that the meaning of "sustainable" or "highest standards" appears to have some ambiguity as used on Red Lobster's menu, a court may properly consider "other information readily available to the consumer that could easily resolve the alleged ambiguity."  *Moore*, 2021 WL 2965445 at *5; *see Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (rejecting plaintiff's argument that ambiguous language allowed different interpretations, holding instead that a "reasonable consumer" would review additional material made available to dispel the ambiguity).

"'[D]eceptive advertising claims should take into account all of the information available to consumers and the context in which that information is provided and used.' . . .  [I]nformation available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging."  *Moore*, 2021 WL 2965445 at *5 (quoting *Bell*, 982 F.3d at 477).  In an age where smartphones are ubiquitous and in-restaurant menus are commonly available by merely scanning a QR code, a reasonable consumer would accept Red Lobster's

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

invitation to review its website to learn more about its sustainability assurances. Plaintiff's failure to do so—a truly remarkable omission by someone who has alleged serious concern about fishing industry practices—places her outside the scope of a reasonable consumer. *See* FAC ¶¶ 27-29; *see also Moore*, 2021 WL 2965445 at *5 ("Here, reasonable consumers would necessarily require more information ….").

Second, the common dictionary definition of "sustainable" does not align with Plaintiff's expansive understanding of the term.  Courts often look to dictionaries for the common and reasonable understanding of words.  *See, e.g.*, *Becerra*, 945 F.3d at 1229 (using dictionary definition to clarify a "reasonable consumer's" understanding of a challenged representation); *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1249, (2018), *as modified on denial of reh'g* (Feb. 22, 2018); *see also Wasatch Prop. Mgmt. v. Degrate*, 35 Cal. 4th 1111, 1121–22 (2005), *as modified* (July 27, 2005) ("When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word.").

Red Lobster's menu provides that their seafood is sustainable, traceable, and responsible.  FAC ¶ 5.  Webster's dictionary defines "sustainable" as "of, relating to, or being a method of harvesting or using a resource so that the resource is not depleted or permanently damaged."   *See   Merriam-Webster*,   https://www.merriam-webster.com/dictionary/sustainability (last visited on October 29, 2021).  None of Plaintiffs' factual allegations demonstrate that Red Lobster's sourcing practices deplete or permanently damage *either* the Maine lobster or shrimp populations they serve.[5]

Third, recognizing her less-than-reasonable interpretation of "sustainable," Plaintiff tries to bolster the credibility of her interpretation by incorporating two

---

[5] In fact, Red Lobster's Maine lobster sourcing practices include efforts to promote regeneration.  As explained in detail on the website, female lobsters with eggs that are trapped, are thrown back into the ocean after notching their tales to signal to other lobstermen that the lobster is capable of reproduction.  Similarly, even the shrimp ablation process described by Plaintiff is intended to increase the farmed shrimp population and decrease the likelihood of depletion of wild caught shrimp.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

consumer surveys into the FAC as a proxy for a "reasonable consumer." *See* FAC ¶¶ 32-34. Even accepting Plaintiff's survey allegations as true, the Ninth Circuit has held that surveys "***cannot, on [their] own, satisfy the reasonable consumer test***." *Becerra*, 945 F.3d at 1230 (emphasis added). In *Becerra*, the Ninth Circuit affirmed the dismissal of a consumer class action claim where a plaintiff similarly relied on a survey to confirm that most consumers expect that diet soda will help them lose or maintain their weight. 945 F.3d at 1230. The plaintiff summarized the results from a survey of 400 California soft-drink consumers and 400 nationwide soft-drink consumers. *Id*. While the court accepted the allegations surrounding the survey as true, it found that the survey nevertheless could not salvage Becerra's claim. *Id*.

Moreover, when surveys are untethered from the actual facts and circumstances of the disputed deceptive statements, as is the case here, they *cannot* establish how a "reasonable consumer" would interpret the challenged language. Indeed, district courts in California routinely reject the use of vague and irrelevant surveys to satisfy the reasonable consumer test. *See, e.g.*, *Tucker v. Post Consumer Brands*, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (noting that a consumer survey on its own cannot satisfy the reasonable consumer test); *Yu v. Dr. Pepper Snapple Group, Inc*., 2020 WL 5910071, at *4-5 (N.D. Cal. October 6, 2020) (same); *Clark v. Westbrae Nat., Inc*., 2020 WL 7043879, at *4 (N.D. Cal. Dec. 1, 2020) ("*Clark I*");*Clark v. Westbrae Nat., Inc.*, 2021 WL 1580827, at *2 (N.D. Cal. Apr. 22, 2021) ("*Clark II*").

For example, in *Clark I*, the plaintiff alleged that a vanilla soymilk label was misleading because she interpreted the label to mean the soymilk's vanilla flavor derived exclusively from the vanilla bean. 2020 WL 7043879 at *4. To support the reasonableness of this interpretation, the plaintiff cited to a recent survey which showed that 69.5% of the 400 consumers surveyed believed that "the 'Vanilla' representation on the Product meant that the Product's flavor comes exclusively from the vanilla bean." *Id.* The court rejected the survey, reasoning that "the vague survey

14

allegation does not make it plausible that reasonable consumers understand that "vanilla" soymilk is flavored exclusively with vanilla bean." *Id.*

In *Clark II*, the court dismissed plaintiff's claims again, rejecting plaintiff's attempt to supplement his amended complaint with yet another survey showing that 49.6% of 403 individuals surveyed believed that the term "vanilla" means that the "product's vanilla flavor 'comes exclusively from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract.'"   *Clark II*, 2021 WL 1580827, at *2 ("[T]he survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word [vanilla] to mean or make plausible the allegation that reasonable consumers are misled by the term [vanilla]." (internal citations omitted); *see also Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (finding that a survey could not save an already implausible consumer deception claim, especially where the survey was only "tangentially related" to the claim).

Here, in her FAC, Plaintiff cites to *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*[6] to support her assertion that "claims such as 'sustainably produced' are perceived by many consumers to mean 'produced according to higher animal welfare standards.'"  FAC ¶ 32-33.  Similar to *Clark I*, Plaintiff does not allege what specific question was asked in this survey.  *See id.*  Moreover, the study surveyed 7,418 people who purchased seafood in *grocery markets* (two-thirds of whom were women because, according to the article, women do more of the shopping) across eight countries *in Europe*.[7]  The intent of the study was to view "sustainability" as a strategy for growth of the ***European*** seafood sector.  *Id.*  Ultimately, Plaintiff's proffered study regarding the behavior of European (not

---

[6] Katrin Zander et al., *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Mktg. 251 (Dec. 22, 2017), https://www.tandfonline.com/doi/full/10.1080/08974438.2017.1413611
[7] *Id.*

15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Californian) consumers in fish markets (not seafood restaurants) has no bearing on the understanding and expectations of a reasonable consumer at a California Red Lobster restaurant.

Plaintiff also cites to "*Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*" to provide context for a reasonable consumer's interpretation of representations that a product is "eco-friendly" or "ecologically sustainable."[8]   FAC ¶ 34.   The study found that "a majority of consumers expect ***eco-labeled seafood*** to be harvested in a way that reduced impact on the fish population or the marine environment."   *Id.* (emph. added.).   And "out of 235 responses, only 4% expressed skepticism about the term ['***ecologically sustainable'***] and felt that 'it was primarily a marketing term without real meaning.'" *Id.* (emph. added).   The phrases "eco-friendly" and "ecologically sustainable,"—which are the specific terms used in the cited survey—are not alleged to be on Red Lobster's printed menu.   In short, any consumer's view on the phrases "eco-friendly" or "ecologically sustainable" is irrelevant. *See Becerra*, 945 F.3d at 1230 (rejecting evidence which was either irrelevant to plaintiff's claims or made no reference to the inference plaintiff was alleging).

Fourth, Plaintiff relies upon FTC guidance in her FAC, yet fails to include any facts to demonstrate any connection between the federal agency's recommendations and a reasonable consumer's understanding of Red Lobster's sustainability representations.   California courts have previously rejected a plaintiff's use of an agency's regulation where the complaint could not explain *how* the regulation supported any conclusion as to a consumer's reasonable interpretation. *Clark I*, *supra*, 2020 WL 7043879 at *4 (rejecting plaintiff's argument that United States Food and Drug Administration ("FDA") regulations regarding vanilla flavoring established custom and practice in the industry such that consumers "experience with that custom

---

[8]17 Fish & Fisheries 825 (Sept. 2016).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and practice primes them to infer from the Products' labeling that the Products gets its vanilla flavor from the vanilla bean."). Plaintiff, too, fails to offer any such explanation connecting the cited FTC guidance to the expectations of a reasonable consumer interpreting the phrases "sustainable," "traceable," "responsible," or "highest standards."

Moreover, Plaintiff's reliance on the FTC's "Green Guides" to establish the "reasonableness" of her unique interpretation of Red Lobster's Sustainability Representations is similarly misplaced. While the FTC Green Guides do caution marketers "not to make unqualified general environmental benefit claims," the guides specifically do not address "organic, sustainable, and natural claims" because "the Commission lacks sufficient evidence on which to base general guidance." FTC Green Guides, 16 C.F.R. § 260.4(b) (2012). In fact, the guides advise that "marketers may be able to qualify general environmental benefit claims to focus consumers on the specific environmental benefits that they can substantiate." *Id*. This is precisely what Red Lobster does by providing a website on its menu so that consumers who want to learn more details about its "Sustainable. Traceable. Responsible." approach to seafood can easily do so. *See* FAC ¶¶ 4-5.

Moreover, Courts routinely include and incorporate the substantive claims appearing on websites when the website addresses are printed on product labels, acknowledging that advertisers may use these websites to provide additional "information about the company's environmental efforts, goals, activities, and initiatives." *Hill v. Roll Internat. Corp*., 195 Cal. App. 4th 1295, 1305, n.5 (2011). In *Hill*, the court recognized that such a practice was not only "permitted," but was actually "encouraged by the FTC guides, as well as the Environmental Marketing Claims Act ("EMCA") that incorporates the guides. The EMCA in fact requires that advertisers maintain, and make available to the public, records explaining and substantiating their environmental claims (§ 17580), and it seems obvious that the website helps defendants comply with the mandate." *Id*.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3.   *Plaintiff's Attempt to Divorce Red Lobster's "Highest Standards" Menu Claim from its Website Explanation of its Standards Fails.*

In her effort to manufacture a claim, Plaintiff attempts to divorce Red Lobster's claims to serve "sustainable" seafood "sourced to the highest standards," from the readily available information Red Lobster provides its customers explaining what "sustainability" means and what "standards" they follow.  Plaintiff cannot have it both ways.  As explained above, any reasonable consumer would access the additional information Red Lobster provides on its website establishing the specific standards it follows regarding sourcing its seafood, including sourcing its various lobster and shrimp products.  Additionally, if the challenged representation is limited solely to the phrases "sustainable" and "highest standards," without incorporating the ***actual*** standards and practices specified on Red Lobster's website, Plaintiff's claim still fails because these phrases—standing alone—are unactionable puffery.

The determination of whether an alleged misrepresentation "is a statement of fact" or is instead "mere puffery" is a legal question that may be resolved on a Rule 12(b)(6) motion.  *See Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc.*, 911 F.2d 242, 245 (9th Cir.1990).  The FTC has recognized puffery in advertising to be "claims [which] are either vague or highly subjective." *Sterling Drug, Inc. v. Federal Trade Commission*, 741 F.2d 1146, 1150 (9th Cir.1984); *see also Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246 (statement that "we're the low-cost commercial collection experts" constituted puffery, case was dismissed). When evaluating whether a statement is puffery, "the Court must look to the generality and specificity of the statements and evaluate whether a significant portion of the general consuming public 'could' be misled." *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1082 (N.D. Cal. 2017).  Contrary to Plaintiff's allegations, no significant portion of the general consuming public could be misled by Red Lobster's statement that their seafood is "sustainably" sourced to the "highest standards."

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Ninth Circuit has found that specific, quantifiable "statements of fact" that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are "mere puffery" that cannot. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir.2008). Plaintiff claims the phrase "highest standard" is misleading. But this phrase—when used on its own— *cannot* be misleading because using the phrase "highest standard" provides no measurable standard, which is why Red Lobster directs its customers in **bold print** to "learn more" from its website, where the applicable standards are identified and described. *See e.g., Krommenhock v. Post Foods LLC*, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) (held that where a phrase is untethered to anything concrete, the phrase, without context is non-actionable puffery).

Furthermore, as for the term "sustainable," Plaintiff herself acknowledges that there are multiple markers and measures of sustainability. Although, Plaintiff heavily relies on Monterey Bay Aquarium, which gives recommendations to consumers regarding sustainable seafood options, the FAC also acknowledges that other certification systems exist. *See e.g.,* FAC ¶¶ 8, 53. For example, Plaintiff specifically acknowledges that some shrimp farms in the regions where Red Lobster sources its food achieve a "Best Aquaculture Practices" certification. *Id.* at ¶ 53. Additionally, Plaintiff cites to a Canadian study which found that "consumers' perception and understanding of sustainability may widely vary from expert definitions" because of their limited knowledge and because "sustainability" is used in many contexts. *Id.* at ¶ 32 (citing Katrin Zander et al., *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Mktg. 251 (Dec. 22, 2017), https://www.tandfonline.com/doi/full/ 10.1080/08974438.2017.1413611). The study also illustrates that consumers rank sustainability issues differently. *Id.*

Thus, a reasonable consumer would not be misled by Red Lobster's "highest standards" or sustainability" representations, both because (1) the claim is highly

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

subjective and (2) a reasonable consumer would look to the Red Lobster website to ascertain the actual standard.

4.    *The Unlawful and Unfair Prongs of the UCL Claim Also Fail.*

Plaintiff also fails to plead facts that support claims under the UCL's unlawful and unfair prongs. Notably, because the FAC relies on the same course of conduct for these prongs as it does for the "fraud" prong, they too must satisfy Rule 9(b).  *See Chong*, 2020 WL 7690175, at *5; *Eidmann*, 2021 WL 764121, at *8 ("when the claim under the UCL unlawful prong is grounded in fraud, the plaintiff must meet the heightened pleading standard under Rule 9(b).").  Plaintiff's "unlawful" prong claim is premised solely on the falsehood that Red Lobster violated the CLRA and the FAL. *See* FAC ¶ 105.  For the same reasons Plaintiffs' CLRA and FAL claims fail, Plaintiff's unlawful claim also fails to state a cognizable claim.  The FAC pleads no facts that would otherwise support an "unlawful" UCL claim.  *See Hodsdon v. Mars*, 891 F.3d 857, 865 (9th Cir. 2018); *cf. Elias*, 903 F. Supp. 2d at 858 (N.D. Cal. 2012) (dismissing UCL claim based on "unlawful" prong that was premised on other statutory causes of action that the court was dismissing).

The FAC also pleads that Red Lobster's representations violate the "unfair" prong of the UCL.  *See* FAC ¶ 108.  But this theory, too, rests on the same conduct alleged in the "fraud" prong—namely, Plaintiff's false allegation that the sustainability representations are misleading to the reasonable consumer. The "unfair" claim thus fails for all the reasons previously discussed. It "overlap[s] entirely with the[] claims of fraud;" thus, *both* theories should be dismissed. *Ahern v. Apple*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019); *Eidmann*, 2021 WL 764121, at *8.

**C.    Plaintiff Lacks Standing to Seek Injunctive Relief.**

Because Plaintiff seeks injunctive relief, she bears the burden of establishing Article III standing to pursue such relief, which requires an injury in fact that is "likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).

Baker & Hostetler llp
Attorneys at Law
Los Angeles

20

*Past* injury and *hypothetical* future injury are insufficient to meet this burden. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Davidson v. Kimberly-Clark*, 889 F.3d 956, 967 (9th Cir. 2018).  When a plaintiff seeks injunctive relief that would require changes to the product or its labeling to cure alleged deception, her only potential basis for standing to seek such relief is to plausibly allege that she intends to purchase the product again in the future.  *See Davidson*, 889 F.3d at 969.[9]

Plaintiff's allegation that she "wishes to be able to continue purchasing the Products" is insufficient to establish standing for injunctive relief.  *See* FAC ¶ 29. Any threatened future injury must be "certainly impending to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'" *Hanna v. Walmart, Inc.*, 2020 WL 7345680, at *7 (C.D. Cal. Nov. 4, 2020) (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409(2013).  As such, Plaintiff has no potential for injury in the future, and thus, under Rule 12(b)(1), has no standing to seek injunctive relief.  *See Yu*, 2020 WL 5910071, at *8 ("Given what Plaintiff knows about Defendants' products and his preference for applesauce and apple juice free of trace amounts of pesticides, the Court does not find it plausible that he would be misled into purchasing these Products in the future."); *Schertzer*, 445 F. Supp. 3d at 1075 (plaintiffs who did not allege that they would buy the product in the future did not have standing to seek injunctive relief under the UCL or CLRA); *Hanna v. Walmart, Inc.*, 2020 WL 7345680, at *7 (C.D. Cal. Nov. 4, 2020) (Scarsi, J.) (dismissing claim for injunctive relief, noting that "a plaintiff's allegation that he or she may purchase a product again is insufficient for purposes of establishing standing").

---

[9] Decisions applying *Davidson* have explained that the case does *not* stand for the "broad" proposition that "consumers deceived by false advertising have standing to seek injunctive relief" in every case.  *Jackson v. General Mills*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020); *Cordes v. Boulder Brands USA*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.).  Rather, "the threat of actual and imminent injury" is still required. *Jackson*, 2020 WL 5106652, at *5. No such threat exists when the "plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward." *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### D.   Plaintiff's Claim for Punitive Damages Must Be Dismissed.

In her FAC, Plaintiff seeks "[p]unitive damages in accordance with proof and in an amount consistent with applicable precedent."  FAC at 36, *Prayer for Relief*. Yet, Plaintiff alleges no plausible factual support to suggest she is entitled to punitive damages, as required by California law and, accordingly, the Court should dismiss or strike Plaintiff's claim for punitive damages. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) (explaining that Rule 12(b)(6) is the appropriate mechanism for seeking dismissal of an improper prayer for relief). Where the basis of a request to strike punitive damages is the lack of factual allegations to support such a claim, the "proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6) not Rule 12(f)." *Kelley v. Corrections Corp. of America*, 750 F.Supp.2d 1132, 1146 (E.D. Cal. 2010) (citing *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp.2d 1002, 1020 (N.D. Cal. 2009)).

Oppressive, fraudulent, or malicious conduct is a prerequisite for any punitive damages claim. Cal. Civ. Code § 3294(a) (emphasis added). In the wake of *Twombly* and *Iqbal*, conclusory allegations of malice, fraud, or oppression are insufficient to state a prayer for punitive damages.  *See Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147-48 (E.D. Cal. 2010). Here, Plaintiff asserts no allegations to support a claim for punitive damages.  *See generally*, FAC; *see also Bouncing Angels, Inc. v. Burlington Ins. Co.*, 2017 WL 1294004, at *4 (C.D. Cal. Mar. 20, 2017) (Bernal, J.) (dismissing request for punitive damages where plaintiff "failed to plead sufficient facts to support a finding of malice, fraud or oppression"); *Freedom Transp., Inc. v. Travelers Companies, Inc.*, 2016 WL 7496731, at *9 (C.D. Cal. Mar. 24, 2016) (Bernal, J.) (finding conclusory allegations in support of punitive damages warranted dismissal where allegations lacked a corresponding factual basis); *Sentinel Offender Servs., LLC v. G4S Secure Sols. (USA), Inc.*, 2014 WL 2511303, at *9 (C.D. Cal. June

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  3, 2014) (Stanton, J.) (dismissing claim for punitive damages where complaint lacked

2  factual support for punitive damages request).

3  **IV.    CONCLUSION**

4          For the foregoing reasons, Red Lobster respectfully request that the Court

5  dismiss Plaintiff's FAC in its entirety, with prejudice.

6

7                                          Respectfully submitted,

8  Dated:  November 4, 2021               **BAKER & HOSTETLER LLP**

9

10                                         By:   */s/ Bethany G. Lukitsch*

11                                               *Bethany G. Lukitsch*
                                                 *Kamran B. Ahmadian*

12                                               *Attorneys for Defendants*
                                                 RED LOBSTER MANAGEMENT

13                                               LLC and RED LOBSTER
                                                 HOSPITALITY LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**PROOF OF SERVICE**

I, Arnel C. Glorioso, declare:

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 11601 Wilshire Boulevard , Suite 1400, Los Angeles, CA  90025-0509.  On November 4, 2021, I served a copy of the within document(s): **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(B)(6)**

| ☑ | **VIA ECF.** I caused such documents to be e-filed with the Court which were then served via the ECF filing system.. |
|---|---|

| | |
|---|---|
| Matthew Strugar<br>Law Office of Matthew Strugar<br>3435 Wilshire Blvd., Suite 2910<br>Los Angeles, CA 90010<br>Telephone: (323) 696-2299<br>Email: matthew@matthewstrugar.com | *Attorneys for Plaintiff Marshall and Proposed Class* |
| Jay R. Shooster (pro hac vice forthcoming)<br>535 Mission Street<br>San Francisco, CA 94105<br>Telephone: (718) 705-4579<br>Facsimile: (718) 228-8522<br>Email: jshooster@richmanlawpolicy.com | *Attorneys for Plaintiff Marshall and Proposed Class* |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.  Executed on November 4, 2021, at Los Angeles, California.

*/s/ Arnel C. Glorioso*
Arnel C. Glorioso

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES