Matthew Strugar (SBN 232951)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(323) 696-2299
matthew@matthewstrugar.com

Jay R. Shooster (*pro hac vice*)
Richman Law & Policy
535 Mission Street
San Francisco, CA 94105
Telephone: (718) 705-4579
Facsimile: (718) 228-8522
jshooster@richmanlawpolicy.com

*Attorneys for Plaintiff Marshall
and Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dezzi Rae Marshall, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>Red Lobster Management LLC and Red Lobster Hospitality LLC,<br><br>　　　　　　　Defendants. | Case No. 2:21-cv-04786-JAK-MAR<br><br>[Assigned to Hon. John A. Kronstadt]<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(B)(6)** |

i

1

## **<u>TABLE OF CONTENTS</u>**

2   INTRODUCTION AND SUMMARY OF CLASS ACTION COMPLAINT..........1

3   STANDARD OF REVIEW........................................................................3

4   ARGUMENT ........................................................................................5

5
6     I.    PLAINTIFF MARSHALL PROPERLY STATES CLAIMS UNDER THE CONSUMER-PROTECTION LAWS. ........................................6

7         A.   Plaintiff Has Satisfied the Reasonable Consumer Test...............6

8
9         B.   Reasonable Restaurant Consumers Are Not Expected to Read Red Lobster's Website.............................................................10

10
11        C.   Plaintiff Marshall's Allegations Meet the Heightened Pleading Standard. ...................................................................14

12
13        D.   Red  Lobster's Sustainability  Representations  Are Not Puffery. ................................................................................18

14
15        E.   Plaintiff States Claims Under the Unlawful and Unfair Prongs of the UCL. ...............................................................20

16
17     II.   PLAINTIFF MARSHALL HAS STANDING TO PURSUE INJUNCTIVE RELIEF......................................................................21

18
19     III.  PLAINTIFF  MARSHALL MAY  PURSUE  PUNITIVE DAMAGES..................................................................................23

20   CONCLUSION ................................................................................24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1
## <u>TABLE OF AUTHORITIES</u>

2
## <u>Cases</u>

3  *Annunziato v. eMachines, Inc.*, 402 F. Supp.2d 1133 (C.D. Cal. 2005) (Selna, J.)

4  ...........................................................................................................19, 20

5  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................3, 4

6  *Ashton v. J.M. Smucker Co.*, No. EDCV 20-992-JGB(SHKx), 2020 U.S. Dist.

7  LEXIS 250428 (C.D. Cal. Dec. 16, 2020).........................................23

8  *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019)....................9

9  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).................................3, 4

10  *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468 (7th Cir. 2020). ...........................7

11  *Beyer v. Symantec Corp.*, 333 F. Supp.3d 966 (N.D. Cal. 2018). ...........................19

12  *Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994). ..................................3, 5

13  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011).

14  ...........................................................................................................15

15  *Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993). .............................3, 5

16  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp.2d 1111 (N.D. Cal. 2010). ...............4

17  *Clark v. Westbrae Nat., Inc.*, No. 20-CV-03221, 2021 U.S. Dist. LEXIS 78703 (N.D.

18  Cal. Apr. 22, 2021). .................................................................9

19  *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242

20  (9th Cir.1990). ....................................................................19

*Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534-PSG(JCx), 2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018). ........................................................22

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). ............21, 22, 23

*Flood v. Miller*, 35 Fed. Appx. 701 (9th Cir. 2002). ...............................................15

*FTC v. AT&T Mobility LLC*, 883 F.3d 848 (9th Cir. 2018). .....................................8

*Godecke ex rel. United States v. Kinetic Concepts, Inc.*, 937 F.3d 1201 (9th Cir. 2019)..................................................................................................................4

*Govea v. Gruma Corp.*, No. CV 20-8585-MFW(JCx), 2021 U.S. Dist. LEXIS 192357 (C.D. Cal. Aug. 18, 2021). ...................................................................23

*Hanna v. Walmart, Inc.*, No. 5:20-cv-01075-MCS-SHK, 2020 U.S. Dist. LEXIS 237505 (C.D. Cal. Nov. 4, 2020). ..................................................................22

*Hardt v. Chrysler Grp. LLC*, No. SACV-14-01375-SJO(VBKx), 2015 U.S. Dist. LEXIS 187386 (C.D. Cal. June 15, 2015)..........................................................24

*Hill v. Roll Int'l Corp*, 195 Cal. App. 4th 1295 (2011). ..........................................14

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, No. 20-15742, 2021 U.S. App. LEXIS 26239 (9th Cir. Aug. 31, 2021). ............................................22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp.2d 1145 (C.D. Cal. 2010) (Selna, J.). .........................19

*Int'l Longshore & Warehouse Union, Local 40 v. Columbia Grain*, No. 313-CV-00513, 2014 U.S. Dist. LEXIS 136326 (D. Ore. July 21, 2014).........................5

iv

*Jackson v. General Mills, Inc.*, No. 18cv2634-LAB(BGS), 2020 U.S. Dist. LEXIS 157898 (C.D. Cal. Aug. 28, 2020). .................................................................22

*Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969 (9th Cir. 2021). ..........7

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp.3d 852 (N.D. Cal. 2015). .................................................................................................................19, 20

*Lavigne v. Herbalife, LTD*, No. LA CV18-07480 JAK (MRWx), 2019 U.S. Dist. LEXIS 216778 (C.D. Cal. Oct. 22, 2019). ...........................................................16

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001). ....................................3, 4

*Lee, U.S. ex rel. v. Corinthian Colls.*, 655 F.3d 984 (9th Cir. 2011)................15, 18

*Lorentzen v. Kroger Co.*, No. 2:20-cv-06754-SB-RAO, 2021 U.S. Dist. LEXIS 79931 (C.D. Cal. Apr. 2, 2021). ....................................................................7, 17

*Marshall v. Ford Motor Co.*, No. 1:17-CV-0006, 2017 U.S. Dist. Lexis 53935 (E.D. Cal. Apr. 7, 2017). .........................................................................................23

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020)...........................14

*Moore v. Trader Joe's Co.*, 4 F. 4th 874 (9th Cir. 2021). .............................7, 12, 13

*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983). .......................5

*Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019). ..............15, 17

*Orlick v. Rawlings Sporting Goods Co.*, No. CV 12-6787-GHK (RZX), 2013 WL 12139142 (C.D. Cal. Feb. 20, 2013). ....................................................................19

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

*Padilla v. Whitewave Foods Co.*, No. LA CV18-09327-JAK(JCx), 2019 U.S. Dist. LEXIS 167126 (C.D. Cal. July 26, 2019). ..................................................21, 23

*Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564 (9th Cir. 2017). ........17

*Schertzer v. Bank of Am., N.A.*, 445 F. Supp.3d 1058 (S.D. Cal. 2020)..................22

*Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520 (N.D. Cal. 2018). .......11

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981). ................................3

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003). .....................................15

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008). ......................3, 7, 12

*Wool v. Tandem Computers Inc.*, 818 F.2d 1433 (9th Cir. 1987). ....................15, 16

*Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-CV-06664, 2020 U.S. Dist. LEXIS 185322 (N.D. Cal. Oct. 6, 2020). ....................................................................9, 22

*Zeiger v. WellPet LLC*, 304 F. Supp.3d 837 (N.D. Cal. 2018)................................19

## **Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et. seq.*...................................................6, 14, 20

Cal. Bus. & Prof. Code §§ 17500 *et. seq.*...................................................6, 14, 20

Cal. Civ. Code § 3294 .....................................................................................23

Cal. Civ. Code §§ 1750 *et. seq.* ..................................................................6, 14, 20

## **Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... passim

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Fed. R. Civ. P. 9(b) ............................................................................................. passim

## **INTRODUCTION AND SUMMARY OF CLASS ACTION COMPLAINT**

This is a relatively straightforward case of consumer deception in the restaurant industry. In her First Amended Class Action Complaint ("Am. Compl.," Dkt. #18, 09/20/2021), Plaintiff Dezzi Rae Marshall alleges:

- Defendants Red Lobster Management LLC and Red Lobster Hospitality LLC (collectively, "Red Lobster") make representations about the sustainability of their shrimp and Maine lobster products, which the pleading refers to as "Sustainability Representations" (Am. Compl. ¶¶ 4-5);

- These representations are uniformly made to Red Lobster's customers, on the cover of Red Lobster's menu and inside the menu (*id.* ¶¶ 4-5, 29);

- Red Lobster refers to these representations about sustainability as "promises" to its customers (*id.* ¶¶ 4-5, 29, 68);

- Studies show, and Red Lobster knows, that these Sustainability Representations have meaning to consumers, and lead consumers to believe that Red Lobster's shrimp and Maine lobster are sourced according to higher environmental and animal-welfare standards (*id.* ¶¶ 31-34, 61);

- Despite Red Lobster's promises, its shrimp and Maine lobster products are sourced using environmentally destructive methods with no special regard for animal welfare (*id.* ¶¶ 37-61)—as just one example, the Amended Complaint alleges that Red Lobster intentionally continued to source from its Maine lobster suppliers even after it learned that these suppliers were found to be in violation of the Endangered Species Act and had their sustainability certification revoked (*id.* ¶¶ 36-37, 66); and thus,

- Red Lobster deceives consumers in order to reap higher profits from shrimp and Maine lobster products (*id.* ¶¶ 61-71).

1

Those allegations suffice to place Red Lobster on notice of the claims.

Nevertheless, the Amended Complaint provides additional detail as well:

- Plaintiff Marshall provides detailed allegations regarding her own purchases from Red Lobster. She alleges that, on January 4, 2020, she purchased the "Family Feast," "Lobster Lover's Dream," and "Ultimate Feast" products at Red Lobster's location in Valencia, CA. (*Id.* ¶ 23.) She further alleges that, in deciding to make these purchases, she relied upon Red Lobster's Sustainability Representations on the menu, including "Seafood With Standards," "Traceable. Sustainable. Responsible.," and "These are more than just words on our menu—it's our promise that all of the seafood we serve is sourced to the highest standards." (*Id.* ¶ 24; *see also id.* ¶¶ 4-5 (photographs of menu).)

- The Amended Complaint specifies that Defendant Red Lobster Management LLC "is involved in Red Lobster's 'Seafood with Standards' campaign and marketing," and Defendant Red Lobster Hospitality LLC "is involved in Red Lobster's restaurants and sales." (*Id.* ¶ 20.) Plaintiff Marshall further alleges that "Red Lobster's deceptive advertising could not have occurred in the absence of the authorization or ratification of an officer, director, or manager of Defendants." (*Id.* ¶¶ 65-66.)

Red Lobster begins its Memorandum in Support of Motion to Dismiss Plaintiff's First Amended Complaint ("Mem.") with matters outside the pleading, assuring the Court (like it promises consumers) that Red Lobster is "committed to serving sustainably sourced seafood from its restaurants across the United States" and stating (without reference to the pleading) that Plaintiff Marshall is merely "dissatisfied" with the purported "sustainability program." (Mem. 1.) In essence, Red Lobster asks the Court to overlook Plaintiff Marshall's actual allegations in favor of its own view: "In truth, the assurances of 'sustainability' on Red Lobster's

2

printed menu are accurate." (*Id.*; *see also id.* at 2 (touting Red Lobster's history and purported "commitment").) That is wholly inappropriate on a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6) review is limited to the complaint. All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to plaintiffs." (internal citations omitted)). [1] Plaintiff Marshall asks the Court to disregard Red Lobster's extraneous promises and consider her First Amended Complaint as actually pleaded—so that the parties may begin discovery on Red Lobster's promises to consumers.

## **STANDARD OF REVIEW**

Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (citations omitted); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (noting "rare situation in which granting a motion to dismiss is appropriate"). Generally, a claim is facially plausible, and will survive a motion to dismiss, when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 695-96 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1  defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678.

2         At this stage of the litigation, Plaintiff Marshall's obligation is limited to

3  pleading factual allegations sufficient to state a claim. That is, Rule 9(b) requires

4  the complaint to be "specific enough to give the defendant notice of the particular

5  misconduct so that it can defend against the charge . . . . The [plaintiff] must allege

6  'the who, what, when, where, and how' of the misconduct." *Godecke ex rel. United*

7  *States v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (internal

8  citations omitted); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp.2d 1111,

9  1126 (N.D. Cal. 2010) ("Even assuming defendant's Rule 9(b) arguments are

10  relevant to the consideration of a motion for judgment on the pleadings, plaintiffs

11  have identified the particular statements they allege are misleading, the basis for

12  that contention, where those statements appear on the product packaging, and the

13  relevant time period in which the statements were used. As such, they have satisfied

14  the requisite 'who, what, when, where, and how' of the misconduct charged."). A

15  court must assume the truth of these allegations and construe them in the light most

16  favorable to the plaintiff. *See Twombly*, 550 U.S. 544; *Lee*, 250 F.3d at 688. As

17  such, a motion to dismiss must accept the pleading as true—not engage the Court

18  in fact disputes before there has been any opportunity to develop a factual record.

19         Review of the legal sufficiency is limited to the "four corners" of the

20  complaint—evidence extrinsic to the pleadings cannot normally be considered in

4

deciding a 12(b)(6) motion. *See Branch*, 14 F.3d at 449; *Cervantes*, 5 F.3d at 1274. Attempts to force judicial review beyond the four corners of the Complaint are thus improper; and the Court must treat the motion as such. In the Ninth Circuit, a court must either exclude extrinsic evidence, or rely on the evidence and convert the purported Rule 12(b)(6) motion into a motion for summary judgment:

> The Ninth Circuit has recognized ". . . a motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleading happen to be filed with the court and not expressly rejected by the court." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983). However, the instances in which such conversion does not occur are those where "nothing in the [court] record suggest[s] reliance on the [extrinsic evidence]" and a "district court . . . expressly indicate[s] that it [is] dismissing [on motion to dismiss grounds]." *Id.*

*Int'l Longshore & Warehouse Union, Local 40 v. Columbia Grain*, No. 313-CV-00513, 2014 U.S. Dist. LEXIS 136326, at *13-14 (D. Ore. July 21, 2014) (collecting cases) (holding that motion to dismiss converted to summary judgment).

## **ARGUMENT**

This is a classic case of a uniform "promise"—that is what Red Lobster calls the Sustainability Representations—about shrimp and Maine Lobster products, a "promise" to consumers that turns out to be untrue. Red Lobster's two primary arguments are (1) that no consumer could interpret sustainability promises actually to mean that the Products are produced using elevated standards, and (2) that consumers sitting in a Red Lobster restaurant should be required to check Red

Lobster's website for qualifications before relying on the unqualified promises on the menu. Neither of these arguments accords with California law. Equally weak is Red Lobster's contention that Plaintiff Marshall, having discovered Red Lobster's deception, is no longer allowed to seek to enjoin the ongoing conduct that continues to harm California consumers. This is a well-pleaded consumer-deception case, and Plaintiff Marshall should be allowed to take the discovery that will prove her claims.

## I.   PLAINTIFF MARSHALL PROPERLY STATES CLAIMS UNDER THE CONSUMER-PROTECTION LAWS.

Plaintiff Marshall's claims under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") share a common factual basis: that Red Lobster deceives consumers with Sustainability Representations about its Shrimp Products and Lobster Products. This suffices to state a claim under each law.

### A.   Plaintiff Has Satisfied the Reasonable Consumer Test.

"To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer." *Lorentzen v. Kroger Co.*, No. 2:20-cv-06754-SB-RAO, 2021 U.S. Dist. LEXIS 79931 (C.D. Cal. Apr. 2, 2021) (citing *Williams*, 552 F.3d at 938). Because it is usually a question of fact whether a defendant's representations are deceptive,

it is a "rare situation" in which dismissal is appropriate. *Id.* at 939; *see also Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969, 970-71 (9th Cir. 2021). A court may find as a matter of law that no reasonable consumer could be deceived by a defendant's advertising only where the plaintiff's interpretation is "unreasonable or fanciful," *Moore v. Trader Joe's Co.*, 4 F. 4th 874, 883 (9th Cir. 2021) (quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)), or where "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived," *Williams*, 552 F.3d at 939.

Plaintiff Marshall has plausibly alleged that reasonable consumers are likely to be deceived by the Sustainability Representations on Red Lobster's menu. According to her Amended Complaint, reasonable consumers are deceived by the claims on Red Lobster's menus that "sustainable" and "responsible" are Red Lobster's "promise" and that it adheres to the "highest standards" in sourcing its seafood because of its "responsibility to protect and preserve our oceans and marine life for generations to come." (Am. Compl. ¶¶ 4-5.) Reasonable consumers reading these claims expect Red Lobster to source its seafood "in accordance with the highest environmental and animal welfare standards." (*Id.* ¶¶ 6, 30.) Such consumers are likely to be deceived because, contrary to its Sustainability Representations, Red Lobster sources its Maine lobster and shrimp from suppliers that use practices that are ***detrimental*** to the environment and animals. (*Id.* ¶¶ 7-9,

37-61.)  Such practices include sourcing from suppliers even after learning that these suppliers violated the Endangered Species Act and had their sustainability certification revoked. (*Id*. ¶¶ 36-37, 66.)

Plaintiff Marshall is not making "unreasonable leaps in logic" (Mem. 11) when she assumes that "promises" of sustainability mean that Red Lobster is sourcing with higher environmental and animal-welfare standards. Fact allegations in the pleading show that Plaintiff's assumption is reasonable. For example, Plaintiff Marshall's interpretation is consistent with the opinion of the Federal Trade Commission—"the leading federal consumer protection agency," *FTC v. AT&T Mobility LLC*, 883 F.3d 848, 850-51 (9th Cir. 2018)—that unqualified sustainability claims ***do*** convey that a product is environmentally beneficial or has "no negative environmental impact." (Am. Compl. ¶ 31.) Her interpretation is likewise supported by the research referenced in the Amended Complaint showing that consumers interpret sustainability in the seafood context to mean protection of animal welfare and the environment. (*Id.* ¶¶ 32-34.) Red Lobster argues that the consumer surveys do not help meet the reasonable consumer test. (Mem. 13-16.) But the cases Red Lobster cites in support of this argument stand for the proposition that a plaintiff cannot rely ***solely*** on a survey to establish how consumers interpret the defendant's representations when the plaintiff's interpretation is ***unreasonable***. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230-31 (9th Cir. 2019)

8

("At bottom, the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet'."); *Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-CV-06664, 2020 U.S. Dist. LEXIS 185322, at *5 (N.D. Cal. Oct. 6, 2020) ("Surveys cannot alone salvage implausible claims."); *Clark v. Westbrae Nat., Inc.*, No. 20-CV-03221, 2021 U.S. Dist. LEXIS 78703, at *2-3 (N.D. Cal. Apr. 22, 2021) (finding survey allegations did not establish plausibility of plaintiff's unreasonable interpretation of "vanilla" labeling). *Cf. Tucker v. Post Consumer Brands, LLC*, No. 19-CV-03993, 2020 U.S. Dist. LEXIS 71090, at *13 (N.D. Cal. Apr. 21, 2020) ("While the consumer survey described in the amended complaint cannot, on its own, satisfy the reasonable consumer test, it provides further support for plaintiff's position."). Plaintiff Marshall's Amended Complaint does not rely solely on surveys to make plausible an otherwise unreasonable interpretation of Red Lobster's Sustainability Representations; instead, the surveys cited in the Amended Complaint provide added support her already reasonable theory of consumer deception.

Red Lobster's own menu provides further support, stating that Red Lobster has a "responsibility to **protect and preserve our oceans and marine life** for generations to come." (Am. Compl. ¶ 5 (emphasis added).) Whatever definition of sustainability Red Lobster now proffers in litigation, on its menus it clearly conveys

9

that its sourcing standards protect ***both the environment and marine animals***. This accords with the dictionary definition of "sustainable" quoted by Red Lobster— "of, relating to, or being a method of harvesting or using a resource so that the resource is not depleted or permanently damaged" (Mem. 13)—in that its seafood sourcing impacts both environmental and marine animal resources. Indeed, Plaintiff Marshall's interpretation of the Sustainability Representations makes more sense than Red Lobster's illogically narrow position that its sourcing practices cannot be unsustainable if they do not deplete or permanently damage lobster or shrimp populations. (*Id.*) Red Lobster's attempt to replace Plaintiff Marshall's reasonable understanding with its own interpretation shows only that a trier of fact is necessary as this lawsuit continues. The issue at this stage is whether Plaintiff Marshall has plausibly asserted that consumers are deceived by Red Lobster's "promises" of sustainability. In this, she has undoubtedly succeeded.

## B. Reasonable Restaurant Consumers Are Not Expected to Read Red Lobster's Website.

Red Lobster cannot avoid the unqualified promises on its menu—which every consumer ordering dinner necessarily sees—with an invitation to find "more information" (presumably, meant to qualify these promises) on its website. (Mem. 12-14; *see also, e.g.*, Mem. 3 (arguing that Red Lobster's website provides "up-to-date information").) ***This is Red Lobster's primary argument, relied upon***

10

***throughout its Memorandum.*** (*E.g.*, Mem. 3 ("In short, reasonable consumers interested in learning more about Red Lobster's standards have a wealth of [website] information available to them."); *id.* 9 (referring to Red Lobster's website for "entirety" of Sustainability Representations); *id.* 11 (arguing that website "explicitly outlines" more information about menu promises); *id.* 18 ("any reasonable consumer would access the additional information Red Lobster provides on its website"). Even if the content on Red Lobster's website did cure the deception caused by its menu claims (it does not),[2] reasonable restaurant consumers are not charged with a duty to read a website learn the truth. *See Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 532 (N.D. Cal. 2018) ("It would not be reasonable to expect a consumer to search for disclaimers on a website to clarify a purported misrepresentation on in-store signage.").

Reasonable consumers faced with misrepresentations on the front of a product package are not even expected to look on the side of the ***same package*** for qualifying disclosures. *See Williams*, 552 F.3d at 939-40 ("We disagree with the district court that reasonable consumers should be expected to look beyond

---

[2] To be clear, Plaintiff Marshall does not agree with Red Lobster that its website cures the deception of its Sustainability Representations on its menus. But the website is not at issue as Plaintiff alleges that she and class members reasonably relied on the ***menu*** claims.

11

misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Likewise, reasonable restaurant customers are not expected to look beyond deceptive language in a menu for clarification in other parts of the *same menu*. *See Kang*, 844 F. App'x at 971-72 ("we cannot assume that reasonable consumers would necessarily look past the term 'krab mix' in the item they were ordering to notice that 'crab' appeared as an ingredient in other items on the same menu"). If reasonable consumers are not expected to search for clarifying information even the very package or menu they have in hand, Red Lobster cannot expect its restaurant customers to pull out their smartphones and study its website (Mem. 12-13) before deciding what they will have for dinner.

Red Lobster's argument to the contrary is not supported by the Ninth Circuit's decision in *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021). In that case, the court affirmed the dismissal of consumer-protection claims alleging that Trader Joe's "100% New Zealand Manuka Honey" and "New Zealand Manuka Honey" labeling misrepresented the products as having far more honey derived from Manuka flowers than it actually had. *Id.* at 877. The court found the labeling to not be deceptive as a matter of law "based on three key *contextual inferences from the product itself*: (1) the impossibility of making a honey that is 100% derived from one floral source, (2) the low price of Trader Joe's Manuka Honey,

1  and (3) the presence of the '10+' on the label, ***all of which is readily available to***

2  ***anyone browsing the aisles*** of Trader Joe's." *Id*. at 883 (emphasis added). By

3  contrast, Plaintiff Marshall's interpretation of Red Lobster's Sustainability

4  Representations is neither "impossible" nor inconsistent with other contextual

5  inferences readily available to Red Lobster's customers in their restaurants.

6  Nothing in *Moore* suggests that consumers in a brick-and-mortar store are expected

7  to read a website to understand representations made at the point of sale.

8         Nor does *Hill v. Roll International Corp.* support Red Lobster's argument

9  that "[c]ourts routinely include and incorporate the substantive claims appearing

10 on websites when the website addresses are printed on product labels." (Mem. at

11 17.) In this single case cited by Red Lobster for a footnote (which hardly shows a

12 routine practice of courts), the court referenced the ***website address*** printed on the

13 defendants' label (not the website itself) as ***confirming*** that it was unreasonable for

14 the plaintiff to interpret a green drop symbol next to the web address as signifying

15 a third-party certification. *See Hill*, 195 Cal. App. 4th 1295, 1305 (2011) ("[F]or

16 context, a green drop on the back of every bottle appears right next to the Web site

17 name, 'fijigreen.com,' further confirming to a reasonable consumer that the green

18 drop symbol is by Fiji water, not an independent third party organization."). The

19 court did not "include and incorporate" the substance of the website as part of the

20 challenged label representation.

13

**C.      Plaintiff Marshall's Allegations Meet the Heightened Pleading Standard.**

It is not clear that Rule 9(b) applies to claims under California's consumer-protection laws because "a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020). Nevertheless, the Amended Complaint more than satisfies Rule 9(b)'s heightened pleading standard. Indeed, Red Lobster's own response to Plaintiff Marshall's allegations demonstrates that the Amended Complaint sufficiently put Defendants on notice of their alleged wrongdoing. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) ("The fact that Plaintiffs placed Defendants on sufficient notice to respond to the alleged fraud reflects how their allegations meet Rule 9(b).").

Rule 9(b) is satisfied if a pleading identifies "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citation omitted). Under Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

14

"Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be plead generally, or in accordance with Rule 8." *U.S., ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). In addition, the rule's pleading standard "may be relaxed as to matters peculiarly within the opposing party's knowledge" when the plaintiff "cannot be expected to have personal knowledge of the facts constituting the wrongdoing." *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439-40 (9th Cir. 1987) (overruled on other grounds as stated in *Flood v. Miller*, 35 Fed. Appx. 701, 703 n.3 (9th Cir. 2002)); *see also, e.g.*, *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019) (expressing same rule).

Plaintiff Marshall's Amended Complaint adequately alleges the "who"—Defendants Red Lobster Management LLC and Red Lobster Hospitality LLC—and describes the respective roles of each Defendant as much as possible: "Red Lobster Management LLC is involved in Red Lobster's 'Seafood with Standards' campaign and marketing"; "Red Lobster Hospitality LLC is involved in Red Lobster's restaurants and sales"; and, "Collectively, Red Lobster produces, advertises, markets, and distributes the Products throughout the United States. Red Lobster created and/or authorized the false and deceptive marketing of the Products." (Am. Compl. ¶¶ 19-21). Plaintiff Marshall is not required to allege more detail about the roles of the respective Defendants, which is known only by Red

15

Lobster itself. *See, e.g.*, *Lavigne v. Herbalife, LTD*, No. LA CV18-07480 JAK (MRWx), 2019 U.S. Dist. LEXIS 216778,  at *22-23 (C.D. Cal. Oct. 22, 2019) ("Where the identity of an individual defendant is within the particular knowledge of the moving party, the standards of Rule 9(b) may be relaxed."); *see also Wool*, 818 F.2d at 1440 (in case of fraud in group-published document, "a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations").

Plaintiff Marshall sufficiently alleges the "what": representations on Red Lobster menus—

- "Seafood With Standards," "Traceable. Sustainable. Responsible."; and

- "These are more than just words on our menu—it's our promise that all of the seafood we serve is sourced to the highest standards. Because, as one of the world's largest seafood purchasers, we believe it's our responsibility to protect and preserve our oceans and marine life for generations to come."

(Am. Comp. ¶¶ 4-5.)

Plaintiff Marshall adequately alleges the "when" and "where": on January 4, 2020, when Plaintiff Marshall purchased shrimp and Maine lobster products at the Red Lobster restaurant at 27524 The Old Road, Magic Mountain Pkwy, Valencia, CA 91355, and otherwise during the statute of limitations period at Red Lobster

16

restaurants in California. (Am. Compl. ¶¶ 13, 23). Such allegations are sufficient to satisfy Rule 9(b). *See Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (finding Rule 9(b) met where plaintiff alleged specific date and store of purchase); *Lorentzen*, 2021 U.S. Dist. LEXIS 79931 at *3 (finding sufficient allegation that false statements were made during class period in California). Plaintiff Marshall is not required, as Red Lobster argues, to allege when the representations that she saw first appeared on a Red Lobster menu or whether they were consistent throughout the Class Period, as these are matters peculiarly within Red Lobster's knowledge. *See Nayab*, 942 F.3d at 493-94. Whether Red Lobster's Sustainability Representations were consistent throughout the limitations period will be a topic for discovery and class certification.

Finally, Plaintiff Marshall extensively alleges "how" (through Sustainability Representations on Red Lobster's menus) and "what is false or misleading" about the statements: Through affirmative misrepresentation and omission of material facts, the Sustainability Representations cause reasonable consumers to believe that Red Lobster's shrimp and Maine lobster suppliers adhere to the highest standards of environmental protection and animal welfare, when actually those suppliers use practices that are environmentally destructive, are inhumane to shrimp, and (with respect to Maine lobster) endanger North American right whales. (Am. Compl. ¶¶ 6-9, 30-64, 107.) Plaintiff Marshall is not expected to know the identity or

17

1   specific practices of Red Lobster's suppliers; Rule 9(b) does not require a plaintiff

2   to allege such facts with particularity. *See, e.g.*, *Corinthian Colls.*, 655 F.3d at 992

3   ("Rule 9(b) requires only that the circumstances of fraud be stated with

4   particularity; other facts may be plead generally, or in accordance with Rule 8.").

5   The rule requires only that Red Lobster be put on notice of the alleged fraud. There

6   can be no serious question whether the Amended Complaint adequately puts Red

7   Lobster on notice of its alleged violations of California's consumer protection laws.

8   ### D.   Red Lobster's Sustainability Representations Are Not Puffery.

9          Amazingly, Red Lobster argues in court that its menu statements are puffery

10   on which no reasonable consumer would rely—while the menu itself tells

11   consumers that the statements are "more than just words" and a "promise." (Am.

12   Compl. ¶ 11.) "Puffery is often described as involving outrageous generalized

13   statements, not making specific claims, that are so exaggerated as to preclude

14   reliance by consumers." *Orlick v. Rawlings Sporting Goods Co.*, No. CV 12-6787-

15   GHK (RZX), 2013 WL 12139142, at *5 (C.D. Cal. Feb. 20, 2013) (citation

16   omitted). A claim is unactionable puffery if it "is extremely unlikely to induce

17   consumer reliance." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp.3d 852,

18   860-61 (N.D. Cal. 2015). In contrast, "misdescriptions of specific or absolute

19   characteristics of products are actionable." *In re Toyota Motor Corp. Unintended*

20   *Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp.2d 1145, 1176

1    (C.D. Cal. 2010) (Selna, J.) (citing *Cook, Perkiss & Liehe, Inc. v. Northern Cal.*

2    *Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir.1990)) (internal quotation marks

3    omitted).

4          Red Lobster's representations about sustainability appear in the context of

5    its "promise that all of the seafood we serve is sourced to the highest standards."

6    This is not mere puffery. Instead, the Sustainability Representations are "specific

7    factual assertion[s] which could be established or disproved through discovery."

8    *Annunziato v. eMachines, Inc.*, 402 F. Supp.2d 1133, 1140-41 (C.D. Cal. 2005)

9    (Selna, J.). Advertising claims that a company adheres to the highest or strictest

10   standards are objectively verifiable and, thus, not puffery. *See, e.g., Beyer v.*

11   *Symantec Corp.*, 333 F. Supp.3d 966, 977 (N.D. Cal. 2018) (claim that software is

12   "industry leading" is not puffery); *Zeiger v. WellPet LLC*, 304 F. Supp.3d 837, 851

13   (N.D. Cal. 2018) (statements including "We require all suppliers to meet stringent

14   requirements and adhere to the highest standards" and that product is "safe" and

15   "pure" are not puffery); *L.A. Taxi Coop., Inc.*, 114 F. Supp. 3d at 861 (claims that

16   Uber is "setting the strictest safety standards possible" and "already best in class"

17   are not puffery); *Annunziato*, 402 F. Supp.2d at 1140 ("most stringent quality

18   control tests" is not puffery). Plaintiff Marshall is entitled to establish through

19   discovery that Red Lobster's sourcing standards are ***not***, in fact, the "highest

20   standards" of sustainability.

19

**E.      Plaintiff States Claims Under the Unlawful and Unfair Prongs of the UCL.**

As Red Lobster acknowledges (Mem. 20), if Plaintiff Marshall sufficiently pleads unlawful conduct under the CLRA and FAL—as she has—then her "unlawful" and "unfair" claims under the UCL also survive. For all the reasons discussed above, the Amended Complaint states claims that Red Lobster violated the CLRA and FAL and, thus, also states claims under the "unlawful" and "unfair" prongs of the UCL. *See, e.g.*, *Lorentzen*, 2021 U.S. Dist. LEXIS 79931 at *15 ("as Plaintiff's allegations are tied to asserted violations of the FAL and CLRA (which survive under both Rule 12(b)(6) and Rule 9(b) as discussed supra), both of her UCL claims also survive").

**II.     PLAINTIFF MARSHALL HAS STANDING TO PURSUE INJUNCTIVE RELIEF.**

Plaintiff Marshall has alleged that "[she] wishes to be able to continue purchasing the Products and, therefore, wishes to see them truthfully and sustainably sourced in accordance with the highest environmental and animal welfare standards." (Am. Compl. ¶ 27.) She has further alleged that "[c]onsumers lack the information and scientific knowledge necessary to determine whether the Products are in fact 'sustainable'" and thus "must and do rely on Red Lobster to report honestly whether the lobster and shrimp used in the Products are sourced from suppliers that use environmentally destructive and inhumane practices." (*Id.*

20

¶¶ 63-64.) Under Ninth Circuit precedent, this is sufficient to establish Article III standing to seek injunctive relief.

In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," where the consumer plausibly alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." 889 F.3d 956, 969-70 (9th Cir. 2018); *see also Padilla v. Whitewave Foods Co.*, No. LA CV18-09327-JAK(JCx), 2019 U.S. Dist. LEXIS 167126, at *18-23 (C.D. Cal. July 26, 2019) (citing *Davidson*). As in *Davidson*, Plaintiff Marshall's "alleged harm is her inability to rely on the validity of the information advertised on [Red Lobster's menu] despite her desire to purchase truly [sustainable Red Lobster Products]."[3] *Davidson*, 889 F.3d at 971. Further, because Plaintiff Marshall

_____

[3] Plaintiff Marshall's continued desire to purchase Red Lobster's Products as advertised, *i.e.*, sustainably sourced in accordance with the highest environmental and animal welfare standards, distinguishes her case from the cases cited by Red Lobster. (Mem. 21.) *See Hanna v. Walmart, Inc.*, No. 5:20-cv-01075-MCS-SHK, 2020 U.S. Dist. LEXIS 237505, at *22 (C.D. Cal. Nov. 4, 2020) (no standing where plaintiff alleges she *may* purchase product, as distinguished from when plaintiff alleges *continued desire* to purchase product as advertised); *Dr. Pepper Snapple Grp.*, 2020 U.S. Dist. LEXIS 185322 at *21-22 (no standing where plaintiff alleged he would only "consider" defendant's brand in future purchasing

will be unable to determine whether Red Lobster has cured its misrepresentations in the future absent injunctive relief, she "has also shown a sufficient likelihood that she will again be wronged in a similar way," as she "faces the similar injury of being unable to rely on [Red Lobster's] representations of its product in deciding whether or not she should purchase the product in the future."[4] *Id.* at 971-72 (citation omitted). Plaintiff Marshall's case thus falls squarely in line with Ninth Circuit precedent finding that a class plaintiff has standing to pursue injunctive relief. *See Padilla*, 2019 U.S. Dist. LEXIS 167126, at *19-20 (finding standing where "Plaintiffs want to purchase the Products in the future, but will not do so if they continue to find Defendants' representations unreliable"); *see also, e.g.*, *Govea v. Gruma Corp.*, No. CV 20-8585-MFW(JCx), 2021 U.S. Dist. LEXIS

_____

decisions); *Schertzer v. Bank of Am., N.A.*, 445 F. Supp.3d 1058, 1075 (S.D. Cal. 2020) (plaintiffs did not allege any intent or desire to purchase product in future); *see also In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, No. 20-15742, 2021 U.S. App. LEXIS 26239, at *3-4 (9th Cir. Aug. 31, 2021) (no standing to seek injunctive relief when "[n]one of the plaintiffs . . . allege a desire to purchase [the product] *as advertised*").

[4] Plaintiff Marshall's inability to determine, in the future, whether the Products are in fact "sustainable" by looking at the menu distinguishes her case from the slack-fill cases cited by Red Lobster. (Mem. 21 n.9.) *See Jackson v. General Mills, Inc.*, No. 18cv2634-LAB(BGS), 2020 U.S. Dist. LEXIS 157898, at *14-15 (C.D. Cal. Aug. 28, 2020) (no standing where plaintiff can "easily determine" amount of product inside package by looking at label); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534-PSG(JCx), 2018 U.S. Dist. LEXIS 217534, at *12-13 (C.D. Cal. Oct. 17, 2018) (same).

22

192357, at *8-10 (C.D. Cal. Aug. 18, 2021) (similar); *Ashton v. J.M. Smucker Co.*, No. EDCV 20-992-JGB(SHKx), 2020 U.S. Dist. LEXIS 250428, at *20-21 (C.D. Cal. Dec. 16, 2020) (similar).

## III.  PLAINTIFF MARSHALL MAY PURSUE PUNITIVE DAMAGES.

Plaintiff Marshall has properly pleaded and may pursue punitive damages. A plaintiff seeking to recover punitive damages under the CLRA must also meet the requirements of California Civil Code § 3294, which states that, in the case of a corporation, a plaintiff must prove that "the wrongful conduct [was] committed, authorized, or ratified by an officer, director, or managing agent of the corporation." *Marshall v. Ford Motor Co.*, No. 1:17-CV-0006, 2017 U.S. Dist. Lexis 53935, at *6 (E.D. Cal. Apr. 7, 2017). Specifically, an officer, director, or manager must have commissioned, authorized, or ratified the wrongful conduct. *See id.* It is sufficient for a plaintiff to meet this pleading standard by showing that the harm alleged could "not have occurred in the absence of authorization or ratification by corporate employer." *Hardt v. Chrysler Grp. LLC*, No. SACV-14-01375-SJO(VBKx), 2015 U.S. Dist. LEXIS 187386 (C.D. Cal. June 15, 2015). Plaintiff Marshall alleges conduct, such as menu representations and "promises" (Am. Compl. ¶¶ 4-5), that certainly could not have occurred at every Red Lobster restaurant absent, at the very least, either authorization from or ratification by Red Lobster officers or directors.

23

1    Red Lobster argues that Plaintiff Marshall has not met the burden for

2    pleading punitive damages because the Amended Complaint does not plead

3    oppressive, fraudulent, or malicious conduct. (Mem. 22.) But Plaintiff Marshall

4    does not have to plead such conduct—she needs only the standard discussed, *supra*,

5    that applies to corporations. That is, Plaintiff only has to demonstrate that the harm

6    could not have occurred in the absence of ratification by a corporate employee,

7    which the Amended Complaint does.

8    ## CONCLUSION

9    For the foregoing reasons, Plaintiff Marshall respectfully requests that the

10   Court deny Defendants' Motion to Dismiss in its entirety. In the event the Court is

11   inclined to grant any portion of the Motion to Dismiss, Plaintiff Marshall requests

12   leave to amend her pleading.

13

14

15

16

17

18

19

20

24

1    DATED: December 20, 2021

2                        **RICHMAN LAW & POLICY**

3

4                        Jay R. Shooster (*pro hac vice*)
jshooster@richmanlawpolicy.com

5                        535 Mission Street
San Francisco, CA 94105

6                        Telephone: (718) 705-4579
Facsimile: (718) 228-8522

7

8                        **LAW OFFICE OF MATTHEW STRUGAR**

9

10                        */s/ Matthew Strugar*
Matthew Strugar (SBN 232951)

11                        3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010

12                        (323) 696-2299
matthew@matthewstrugar.com

13

14                        *Attorneys for Plaintiff Marshall
and Proposed Class*

15

16

17

18

19

20

25

# **CERTIFICATE OF SERVICE**

On December 20, 2021, I caused to be served the above:

1.  Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint For Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(B)(6).

    [x] VIA ECF. I caused such documents to be e-filed with the Court which were then served via the ECF filing system.


Bethany Gayle Lukitsch
Kamran Benjamin Ahmadian
Baker and Hostetler LLP
11601 Wilshire Boulevard Suite 1400
Los Angeles, CA 90025-0509
310-820-8856
Fax: 310-820-8859
Email: blukitsch@bakerlaw.com
Email: kahmadian@bakerlaw.com


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 20th day of December, 2021, at Wilmington, Delaware.


*Jay Shooster*

Jay Shooster

26

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS